Nancy BEARD, Appellant–Respondent,

v.

P.R. DOMINGUEZ, Jr., M.D.,
Appellee–Petitioner.

No. 82A01–0507–CV–300.

Court of Appeals of Indiana.

May 26, 2006.

John D. Clouse, Ivan A. Arnaez, Evansville, for Appellant.

Michael G. Smith, Bamberger, Foreman, Oswald and Hahn, Evansville, for Appellee.

## OPINION

MAY, Judge.

Nancy Beard appeals the dismissal without prejudice of her proposed medical malpractice complaint against Dr. P.R. Dominguez. She purports to raise one issue on appeal,[1] which we expand and restate as:

1. Whether the trial court erred when it denied her motion for leave to file a counterclaim; and

2. Whether the trial court abused its discretion by dismissing her action before the Indiana Department of Insurance ("IDOI") when Beard failed to timely submit evidence to the medical review panel, even though Beard later claimed she was unable to submit the evidence to the panel because she is indigent.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Because we are reviewing the dismissal of Beard's complaint, we accept as true the facts alleged by Beard. In 2002, Dominguez treated Beard for an undisclosed medical condition and committed some undisclosed form of malpractice.

Beard hired private counsel on a contingency contract. On December 29, 2003, Beard filed a proposed medical malpractice complaint with the Indiana Department of Insurance ("IDOI"). She amended her complaint on January 29, 2004. On September 23, 2004, a medical review panel was appointed and submissions were ordered. The schedule of submissions required Beard to submit evidence by November 15, 2004, Dominguez to file evidence by December 20, 2004, and Beard

---

1. The argument section of Beard's brief is devoid of cogent legal reasoning. It quotes relevant statutes, case law, and matters in the record, and then provides conclusory statements such as: "Beard met this head-on" (Appellant's Br. at 7) and "[this] case is dispositive of the case at bar." (*Id.* at 6.) Where possible, we will address the arguments Beard has attempted to raise.

to submit any rebuttal evidence by January 24, 2005.

Beard did not submit evidence. On December 16, 2004, when Beard's submission was one month late, Dominguez contacted Beard to inquire about the status of Beard's submission. Dominguez received no response from Beard.

On March 16, 2005, Beard filed with the IDOI a petition requesting the IDOI "release jurisdiction to the Vanderburgh Circuit Court." (App. at 22.) In that petition, Beard explained that she could not afford both the $3,050 panel expense and approximately $2,000 for an expert witness, but if the IDOI would release her from the obligation to present her evidence to the Board, she could afford to present her evidence to the trial court. The IDOI's response informed Beard the Medical Malpractice Act "does not, however, give the Commissioner the authority to bypass the medical review panel or decide jurisdictional matters; those powers are reserved, if at all, for Indiana's courts." (*Id.* at 32.)

On April 5, 2005, Dominguez filed in the trial court a petition for preliminary determination of law. The petition provided:

The petitioner/defendant, P.R. Dominguez, Jr., M.D., pursuant to I.C. § 34–18–11–1, petitions the Court for a Preliminary Determination of Law, and requests that the Court order respondent/plaintiff's Proposed Complaint/Amended Proposed Complaint to be dismissed pursuant to Rule 41(E) of the Indiana Rules of Trial Procedure. In support of this Petition, P.R. Dominguez, Jr., M.D., states:

1. On December 29, 2003 (amended January 28, 2004), counsel for the respondent/plaintiff, Nancy Beard, filed a Proposed Complaint for medical malpractice with the Indiana Department of Insurance against P.R. Dominguez, Jr., M.D. Copies of the Proposed Complaint/Amended Proposed Complaint are attached hereto as Exhibit A.

2. D. Timothy Born was selected as chairman of the Medical Review Panel, and, on September 23, 2004, a Panel was formed in this matter. A copy of the correspondence from Mr. Born to the Department of Insurance is attached hereto as Exhibit B.

3. Nancy Beard's submission was scheduled to be submitted on November 15, 2004. A copy of Mr. Born's correspondence to the parties setting the submission schedule is attached hereto as Exhibit C.

4. Counsel for Nancy Beard failed to file her submission by this date, and by correspondence dated December 16, 2004, counsel for Petitioner asked counsel for Nancy Beard to advise as to when the parties might expect to receive plaintiff's submission. A copy of this correspondence is attached hereto as Exhibit D.

5. As of this date, counsel for Nancy Beard has not filed a submission in this matter.

6. Pursuant to I.C. § 34–18–10–13, the Medical Review Panel is required to give its expert opinion within 180 days after the selection of the last member of the panel. In this case, the last Panel member was selected on September 23, 2004. One hundred eighty (180) days from this date was March 23, 2005.

7. I.C. § 34–18–10–14 provides that a party who fails to act as required by the provisions of the Medical Malpractice Act is subject to appropriate sanctions by the trial court.

8. A trial court is vested with the authority to dismiss a plaintiff's claim for failure to comply with the evidentiary schedule set forth by the panel chairman. *Gleason v. Bush*, 689 N.E.2d 480 (Ind.Ct.App.1997).

WHEREFORE, P.R. Dominguez, Jr., M.D. requests the Court to enter an Order directing counsel for Nancy Beard to show cause why her Proposed Complaint/Amended Proposed Complaint should not be dismissed pursuant to I.C. § 34–18–10–14 and Trial Rule 41(E) of the Indiana Rules of Trial Procedure.

(*Id.* at 6–7.)

In response, Beard asserted she was unable to pay the panel expense because she is indigent and her private counsel could not afford to cover those expenses for her. She alleged: "The Constitution of the United States, XIV Amendment, and of Indiana, Article 1 § 12, prohibit the denial of access to and remedy by, litigants because of their economic status." (*Id.* at 21.)

Then, on May 19, 2005, Beard filed in the trial court a motion for leave to file a counterclaim. The attached counterclaim was a complaint alleging Dominguez committed medical malpractice and requesting he reimburse her for "her injury, cost of action and all other appropriate relief." (*Id.* at 35.)

On June 2, 2005, the court issued an order stating:

> Comes now the Petitioner, by counsel, Michele S. Bryant, and comes also the Respondent, by counsel, John D. Clouse. A hearing was held on the nature of the Court's denial of said Motion for Leave to File a Counterclaim on May 19, 2005. The Court rules that the denial of said motion was not based in the timeliness of the filing but rather upon the Court's finding that such Counterclaim was not appropriate in this case, and that the Court has no jurisdiction to hear such a Counterclaim. The Court finds that based upon the Respondent's failure to file submissions to the Medical Review Panel, the Petition for Preliminary Determination of Law is granted, the pro-
> posed Counterclaim is not permitted to be filed, and the proposed Complaint before the [IDOI] is dismissed without prejudice.

(*Id.* at 36.)

## DISCUSSION AND DECISION

### 1. *Dismissal of Beard's Counterclaim*

■ In response to Dominguez's petition to dismiss Beard's proposed amended complaint before the IDOI for failure to submit evidence to the medical review panel, Beard attempted to file a "counterclaim" asserting medical malpractice. The court found "that such Counterclaim was not appropriate in this case, and that the Court has no jurisdiction to hear such a Counterclaim." (*Id.*) We agree.

Medical malpractice actions are controlled by the Medical Malpractice Act. Ind.Code art. 34–18. While a party may initially invoke the trial court's jurisdiction by paying a filing fee and filing the proposed complaint, *see* Ind.Code § 34–18–11–2(a), the court has only limited jurisdiction until a medical review panel has submitted its expert opinion regarding the case:

> Notwithstanding section 1 of this chapter, and except as provided in sections 5 and 6 of this chapter, an action against a health care provider may not be commenced in a court in Indiana before:
>
> (1) the claimant's proposed complaint has been presented to a medical review panel established under IC 34–18–10 (or IC 27–12–10 before its repeal); and
>
> (2) an opinion is given by the panel.

Ind.Code § 34–18–8–4. *See also* Ind.Code § 34–18–11–2(b) ("The filing of ... the proposed complaint ... confers jurisdiction upon the court over the subject matter and the parties to the proceeding for the limited purposes stated in this chapter, including the taxation and assessment of

costs or the allowance of expenses, including reasonable attorney's fees, or both.").

Included in the court's limited jurisdiction is the authority to make some preliminary determinations:

(a) A court having jurisdiction over the subject matter and the parties to a proposed complaint filed with the commissioner under this article may, upon the filing of a copy of the proposed complaint and a written motion under this chapter, do one (1) or both of the following:

(1) preliminarily determine an affirmative defense or issue of law or fact that may be preliminarily determined under the Indiana Rules of Procedure; or

(2) compel discovery in accordance with the Indiana Rules of Procedure.

(b) The court has no jurisdiction to rule preliminarily upon any affirmative defense or issue of law or fact reserved for written opinion by the medical review panel under IC 34–18–10–22(b)(1), IC 34–18–10–22(b)(2), and IC 34–18–10–22(b)(4).

(c) The court has jurisdiction to entertain a motion filed under this chapter only during that time after a proposed complaint is filed with the commissioner under this article but before the medical review panel gives the panel's written opinion under IC 34–18–10–22.

Ind.Code § 34–18–11–1.

Pursuant to the Act, the trial court had no authority to hear Beard's medical malpractice "counterclaim." *See* Ind.Code § 34–18–11–1(b) ("The court has no jurisdiction to rule preliminarily upon any ... issue of law or fact reserved for written opinion by the medical review panel ...."). Accordingly, the trial court did not err when it dismissed that counterclaim.

### 2. *Dismissal of Beard's Complaint before the IDOI*

■ The trial court dismissed Beard's proposed complaint before the IDOI pursuant to Ind. Trial Rule 41(E).[2] We review a trial court's decision to dismiss a cause of action under T.R. 41(E) for an abuse of discretion. *Gray v. Westinghouse Elec. Corp.*, 624 N.E.2d 49, 55 (Ind.Ct.App. 1993). An abuse of discretion occurred if the trial court's decision was against the logic and effect of the facts and circumstances before the court. *Lee v. Friedman*, 637 N.E.2d 1318, 1320 (Ind.Ct.App. 1994). "Accordingly, we will affirm the trial court if any evidence supports the trial court's decision." *Gray*, 624 N.E.2d at 55.

■ On appeal, we review several factors to determine whether the trial court abused its discretion by dismissing a case for failure to prosecute:

The length of the delay; the reason for the delay; the degree of personal responsibility on the part of the plaintiff; the degree to which the plaintiff will be charged for the acts of his attorney; the amount of prejudice to defendant caused by the delay; the presence or absence of a lengthy history of having deliberately proceeded in a dilatory fashion; the ex-

---

**2.** T.R. 41(E) provides:

Whenever there has been a failure to comply with these rules or when no action has been taken in a civil case for a period of sixty [60] days, the court, on motion of a party or on its own motion shall order a hearing for the purpose of dismissing such case. The court shall enter an order of dismissal at plaintiff's costs if the plaintiff shall not show sufficient cause at or before such hearing. Dismissal may be withheld or reinstatement of dismissal may be made subject to the condition that the plaintiff comply with these rules and diligently prosecute the action and upon such terms that the court in its discretion determines to be necessary to assure such diligent prosecution.

istence and effectiveness of sanctions less drastic than dismissal which fulfill the purposes of the rules and the desire to avoid court congestion; the desirability of deciding the case on the merits; and the extent to which plaintiff has been stirred into action by a threat of dismissal as opposed to diligence on the plaintiff's part.

*Lee,* 637 N.E.2d at 1320. However, the weight we give to any of those factors depends on the facts particular to each case. *Id.*

■ Dominguez asked the court to dismiss Beard's complaint because she had failed to timely file the required submissions with the medical review panel. A trial court may dismiss a medical malpractice action pending before the IDOI if the plaintiff fails to abide by the submission schedule established by the medical review panel. *See Gleason v. Bush,* 664 N.E.2d 1183, 1187 (Ind.Ct.App.1996). In *Gleason,* we explained the effect of a medical review panel's inability to meet the statutorily imposed 180-day time frame for providing its written opinion:

> [T]he Act's 180-day time frame, alone is neither a statute of limitation, nor the functional equivalent of a statute of limitation. Therefore, if a panel should be unable to comply with IC 27-12-10-13(a) [now Ind.Code § 34-18-10-13(a) ] because of plaintiff's failure to make a timely submission, that does not automatically trigger the imposition of sanctions on either parties or panel members. Instead, the panel must submit an explanation to the commissioner explaining the delay and attempt to expedite the process in a reasonable manner. *See* IC 27-12-10-13(b) [now Ind.Code § 34-18-10-13(b) ]. The defendant may seek dismissal or other sanction by initiating a court action pursuant to IC 27-12-10-14 [now Ind.Code § 34-18-10-14].

Our holding does not depart from our previous decisions ... and nothing in this opinion should serve as support for parties or panel members who are dilatory in upholding the letter and spirit of the Act. We recognize that the 180-day time frame for panels to render expert opinions imposes a duty on parties to submit evidence in accordance with the schedule set by the panel chairman. We further recognize that dismissal of proposed complaints is an appropriate sanction for failure to comply with the provisions in the Act. Courts may not impose sanctions, however, where a party has established good cause. *See* IC 27-12-10-14 [now Ind.Code § 34-18-10-14]; *see also Galindo* [*v. Christensen* ], 569 N.E.2d [702], 706[(Ind. Ct.App.1991)].

*Id.* Accordingly, the trial court had authority to dismiss Beard's proposed complaint unless she demonstrated "good cause" for failing to timely submit the evidence to the medical review panel. *See also Lee,* 637 N.E.2d at 1320 (A trial court may deny a T.R. 41(E) motion for failure to prosecute "where a satisfactory explanation for the delay exists.").

The court's order dismissing Beard's claim before the IDOI does not make clear whether the court considered Beard's claim of indigency. However, we presume the trial court appropriately applied the law, *see Perdue Farms, Inc. v. Pryor,* 683 N.E.2d 239, 240 (Ind.1997) ("In reviewing a general judgment, we must presume that the trial court correctly followed the law."), and we review whether the court abused its discretion when it determined Beard had not demonstrated "good cause" for failing to timely file her submission.

■ Beard asserts she delayed in filing her evidence because her indigence prohibited her from gathering the required submissions or paying the medical panel expense. Beard was ordered, on September 23, 2004, to submit her evidence to the

Medical Review Panel by November 15, 2004. Dominguez contacted her in December, when her submission was one month late, but Beard did not respond to explain the delay. She did not ask until March 16, 2005, one week before the expiration of the 180-day time limit, that the IDOI release her from the requirement to present evidence to it. Nor did she inform the trial court of her indigence or request the court's assistance before Dominguez filed his motion to dismiss on April 5, 2005, which date was after the Medical Review Panel should have provided its report.

We acknowledge the record indicates Beard's counsel had, in those intervening months, contacted two or three other attorneys attempting to determine how he could get funding to proceed with Beard's cause of action before the Medical Review Panel. Nevertheless, Beard failed to timely explain to Dominguez, the Medical Review Panel, or the trial court that she was having difficulty gathering evidence due to her indigency. In essence, she did not seek assistance or input from any of the three parties who were directly involved in her case until she was faced with dismissal. Even if we assume indigence might be "good cause" for delay in filing evidence to a medical review panel, we cannot say this trial court abused its discretion in failing to find good cause when the allegedly indigent party did not timely assert indigence or request assistance.

■ Moreover, we note Ind.Code § 34–10–1–1 does not require the court to subsidize Beard's cause of action before the medical review panel.[3] That statute provides: "An indigent person who does not have sufficient means to prosecute or defend an action may apply to the court in which the action is intended to be brought, or is pending, for leave to prosecute or defend as an indigent person." Ind.Code § 34–10–1–1. When a litigant applies to proceed under that statute:

> (b) If the court is satisfied that a person ... does not have sufficient means to prosecute or defend the action, the court:
>> (1) shall admit the applicant to prosecute or defend as an indigent person; and
>> (2) may, under exceptional circumstances, assign an attorney to defend or prosecute the cause.
> (c) The factors that a court may consider under subsection (b)(2) include the following:
>> (1) The likelihood of the applicant prevailing on the merits of the applicant's claim or defense.
>> (2) The applicant's ability to investigate and present the applicant's claims or defenses without an attorney, given the type and complexity of the facts and legal issues in the action.
> (d) The court shall deny an application made under section 1 of this chapter if the court determines any of the following:
>> (1) The applicant failed to make a diligent effort to obtain an attorney before filing the application.
>> (2) The applicant is unlikely to prevail on the applicant's claim or defense.

Ind.Code § 34–10–1–2.

Beard claims she should have been admitted to prosecute as an indigent person.

---

**3.** While Beard asserted constitutional rights in the trial court, on appeal she asserts only her statutory rights under Ind.Code § 34–10–1–1 and § 34–10–1–2. Accordingly, any constitutional argument is waived. *See* Ind. Appellate Rule 46(A)(8)(a) ("The argument must contain the contentions of the appellant on the issues presented ...."); *see also Watson v. Auto Advisors, Inc.*, 822 N.E.2d 1017, 1028 (Ind.Ct.App.2005) (allegations of error waived where party failed to provide argument in the brief), *trans. denied* 831 N.E.2d 749 (Ind. 2005).

Assuming *arguendo* she is indigent, we agree Ind.Code § 34–10–1–2 gives her the right to prosecute as an indigent person. However, she also asserts that being admitted to prosecute as an indigent entitles her to appear before the medical review panel at public expense, which she estimates to be over five thousand dollars. With this assertion, we cannot so quickly agree.

First, Beard has not directed us to authority explaining what it means for a trial court to permit a person to "prosecute or defend as an indigent." Ind.Code 34–10–1–2(b)(1). We have no doubt that phrase should result in a court waiving filing fees and other court costs, but we decline to interpret that phrase so broadly as to cover all costs necessary to gather evidence and hire a medical review panel.

Indiana decisions and the revision of Ind.Code § 34–10–1–2 explain the factors the court should consider before appointing pauper counsel, but Beard has provided no authority suggesting factors a court should weigh when determining when it would be appropriate to give an indigent party the type of assistance Beard requests herein.

Addressing appointment of counsel for indigent civil parties, our Indiana Supreme Court explained trial courts have "inherent power and authority to incur and order paid all such expenses as are necessary for the holding of court and the administration of its duties." *Sholes v. Sholes,* 760 N.E.2d 156, 164 (Ind.2001). The source of that power is T.R. 60.5, which permits courts to seek funds "reasonably necessary for the operation of the court or court-related functions." If Ind.Code §§ 34–10–1–1 and 34–10–1–2 required counsel to be appointed, then "the payment of counsel become[s] a 'reasonably necessary' court-

related cost, imposed as a result of the legislature's directive." *Sholes,* 760 N.E.2d at 165.

By analogy, if a court must provide funds to "admit an applicant to prosecute or defend as an indigent person," Ind.Code § 34–10–1–2(b)(1), then the payment of funds to effectuate that requirement is also "a reasonably necessary court-related cost imposed" by the legislature. *See id.*

However, courts may not spend legislatively directed funds without balancing the legislative directive against other considerations. *Id.* ("An order to pay funds should not be issued by a trial court if 'any specific fiscal or other governmental interests [would be] severely and adversely affected by the payment.'") Accordingly,

[i]n the absence of any legislatively prescribed source of funding, a court's ability to direct that counsel be appointed is circumscribed by the doctrines surrounding the court's ability to order the expenditure of public funds. Ultimately, then, the decision to appoint counsel for an indigent litigant in a civil case turns on the court's assessment of the nature of the case, the genuineness of the issues, and any other factors that bear on the wisdom of mandating public funds for that purpose.

*Id.* at 159.

■ To be entitled to assistance under Ind.Code 34–10–1–1, a party must demonstrate "he or she is indigent and without 'sufficient means to prosecute or defend' the action." *Id.* at 160. Regarding "indigency" the court explained:

The determination as to the defendant's indigency is not to be made on a superficial examination of income and ownership of property but must be based on as thorough an examination of the defendant's total financial picture as is practical. The record must show that the determination of ability to pay includes a balancing of assets against lia-

bilities and a consideration of the amount of the defendant's disposable income or other resources reasonably available to him after the payment of his fixed or certain obligations.

*Id.* at 161. Regarding "sufficient means" the court held:

> Whether the applicant has 'sufficient means' goes beyond a mere snapshot of the applicant's financial status. Rather, the court must examine the applicant's status in relation to the type of action before it. If the action is of the kind that is often handled by persons of means without counsel, the court may find that even an indigent applicant has 'sufficient means' to proceed without appointed counsel. For example, many forms of small claims actions are typically prosecuted and defended *pro se* even by persons of means. Similarly, cases that have their own ability to fund counsel are another general category where appointed counsel may be inappropriate. The marketplace for lawyer services can value cases often handled on a contingent fee basis. The same is true of litigation governed by fee shifting statutes. In these cases, an indigent may well be found to have sufficient means to prosecute or defend the action.

> We do not mean to create blanket categories of cases in which counsel should never be appointed. Rather, the court should look to the particular issues presented in the action and make a determination of whether the indigent applicant requires appointed counsel. A routine landlord-tenant dispute may present such straightforward issues that the ordinary litigant requires no counsel. In such a dispute, the indigent applicant has 'sufficient means' to prosecute or defend the action without appointed counsel. On the other hand, the same dispute might present complexities or involve such significant precedent that proceeding *pro se* would disadvantage the ordinary litigant, and appointed counsel may be appropriate.

*Id.*

Applying those considerations leads us to conclude the court should not have provided funds to Beard for gathering evidence and presenting it to the Medical Review Panel. The Medical Malpractice Act contains fee-shifting statutes, such that if Beard is successful before the Panel, Dominguez will be required to reimburse her for the panel expenses. We note Beard was able to hire counsel on a contingency contract. Beard's counsel claimed before the trial court he is unable to advance the costs of litigation due to the tax consequences.[4] However, if Beard's

---

4. Beard did not provide any explanation in her brief regarding why her counsel cannot advance the litigation expenses for her. Accordingly, any such argument is waived. *See Watson,* 822 N.E.2d at 1028. Nevertheless, we note that our Rules of Professional Conduct permit lawyers to contract with their clients for contingency fees. *See* R. Prof. Cond. 1.5. In addition, a lawyer may advance advance costs of litigation on behalf of the clients:

> (e) A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that:
>> (1) a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and
>> (2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.

R. Prof. Cond. 1.8. The Comment to that Rule explains:

> Lawyers may not subsidize lawsuits or administrative proceedings brought on behalf of their clients, including making or guaranteeing loans to their clients for living expenses, because to do so would encourage clients to pursue lawsuits that might not otherwise be brought and because such assistance gives lawyers too great a financial stake in the litigation. These dangers

claim is meritorious, as her counsel asserts, then Beard should have no trouble hiring, on a contingency contract, counsel who can afford to advance the expenses of litigation.[5]

This result is supported by Ind.Code § 34–10–1–2(d), which requires the court deny an application made under Ind.Code § 34–10–1–1 if either: (1) "the applicant failed to make a diligent effort to obtain an attorney" or (2) the applicant is unlikely to prevail in the case. Beard did not meet those requirements.

Beard's "diligent effort to obtain an attorney" consisted of her private counsel sending letters to organizations that provide *pro bono* counsel asking if anyone at those organizations had suggestions for obtaining the funds to pay the medical review panel.[6] In addition, counsel contacted the IDOI, which told him it could not give Beard legal advice, but suggested Beard see another lawyer. As the IDOI implicitly suggested, Beard should have been attempting to obtain private counsel who would take her case on a contingency basis *and* could afford to cover the upfront costs of her malpractice action. *See*

*Sholes,* 760 N.E.2d at 160 ("The marketplace for lawyer services can value cases often handled on a contingent fee basis. The same is true of litigation governed by fee shifting statutes. In these cases, an indigent may well be found to have sufficient means to prosecute or defend the action.").

The second requirement of Ind.Code § 34–10–1–2 is that the court deny a request for assistance if the applicant is unlikely to prevail on the merits. Beard asserts her "claim is still viable on its merits" because it was dismissed without prejudice. (Appellant's Br. at 8.) That Beard's claim was dismissed without prejudice implies nothing about the merit of her underlying medical malpractice action; it simply means she has the right to refile the action. She also suggests we should "infer merit as lawyers are ethically bound to only advance such cases." (*Id.*) However, we decline to infer merit from the fact her lawyer is advancing the case, when that lawyer is unwilling to advance the costs of litigation.

In *Harry v. Lehigh Valley Hosp.,* 825 A.2d 1281 (Pa.Super.2003), an indigent liti-

---

do not warrant a prohibition on a lawyer lending a client court costs and litigation expenses, including the expenses of medical examination and the costs of obtaining and presenting evidence because these advances are virtually indistinguishable from contingent fees and help ensure access to the courts. Similarly, an exception allowing lawyers representing indigent clients to pay court costs and litigation expenses regardless of whether these funds will be repaid is warranted.

5. If, on the other hand, Beard cannot find an attorney who is both willing to take her case on a contingency basis and is also able to advance the expenses of litigation, then Beard could request appointed counsel, at which time the trial court would be required to more fully examine whether her claim had sufficient merit to justify expenditure of public funds on counsel.

6. For example, her counsel sent the following letter to the Legal Aid Society of Evansville, the Evansville office of the Legal Services Organization of Indiana, Inc., and the Volunteer Lawyer Program of South West Indiana, Inc.:

> Dear Ladies and Gentlemen:
> I am counsel of record in the above captioned matter. It is a medical malpractice case with all the obligations and contingencies attendant thereto.
> Now I now [sic] that none of you can accept contingent fee cases but this is a twist different. We face litigation expense of $5,000.00 going in and frankly we cannot afford it. Do any of you have any suggestion about what we might do?

(Appellant's App. at 26.)

gant who had retained counsel on a contingency contract asked to proceed as an indigent as to the expenses of appeal. Pennsylvania Rule of Appellate Procedure 552 provides: "If the applicant is represented by counsel who certified on the application or by a separate document that the applicant is indigent and that such counsel is providing free legal service to the applicant, the clerk of the lower court shall forthwith enter an order granting the application." The court held:

> We agree with the trial court that if we were to accept the interpretation of *Rule 552(d)* Appellant urges, then we would effectively be requiring the counties of Pennsylvania to pay all costs, including payment for transcripts, in every contingency fee case in which counsel is willing to certify that his or her client is "indigent." We cannot expand the compass of the Rule in this fashion.

*Id.* at 1284–285. Similarly, we cannot justify the use of public funds to pay for the collection of evidence and hiring of the medical review panel in every case in which an indigent client hires counsel on a contingency contract.

For all these reasons, the trial court did not err when it found Beard had not demonstrated "good cause" for failing to timely submit her evidence to the Medical Review Panel. Accordingly, we affirm.

Affirmed.

KIRSCH, C.J., and ROBB, J., concur.