BAKER MACHINERY,
INC., Appellant,

v.

SUPERIOR CANOPY CORP.,
et al., Appellees.

No. 02A03–0707–CV–322.

Court of Appeals of Indiana.

March 13, 2008.

Benjamin K. McComas, Thompson Hine, LLP, Cincinnati, OH, Attorney for Appellant.

Martin E. Seifert, Haller & Colvin, PC, Fort Wayne, IN, Attorney for Appellee Superior Canopy Corp.

Daniel K. Leininger, Miner Lemon & Walston, LLP, Warsaw, IN, Attorney for Appellee Mega Manufacturing Corp.

## OPINION

FRIEDLANDER, Judge.

Baker Machinery, Inc., filed a complaint under Cause No. 02–C01–0103–CP–403 (CP–403) against Superior Canopy Corporation alleging Superior owed part of the purchase price for a piece of equipment Baker had sold to Superior. Superior later filed a separate lawsuit under Cause No. 02C01–0308–PL–99 (PL–99) against Mega Manufacturing Corp. (Mega), the distributor of the machinery at issue, and Allsteel Corporation a/k/a Produits Ferro Cie Ltee a/k/a Ferro Products Co., LTD (Ferro), the equipment's manufacturer. Both complaints were dismissed with prejudice pursuant to Indiana Trial Rule 41(E). Baker appeals the dismissals, presenting the following restated issues for review:

1. Did the trial court err in dismissing Baker's complaint after Baker had asked the trial court to issue a scheduling order?

2. Did the trial court properly consider and apply the factors relevant to dismissal under T.R. 41(E)?

We affirm.

The facts of the underlying action are that Baker is a small company that serves as a manufacturer's representative in selling industrial equipment. On April 30, 1999, Baker sold to Superior a press brake system and a combination cut-to-length line for a total of $313,181.00. Superior made an initial payment of $198,191.75. The equipment was installed in September 1999 and Superior immediately began experiencing problems with it. As a result, Superior refused to pay the balance of the purchase price. On March 26, 2001, in CP–403, Baker filed a complaint for damages against Superior, alleging breach of contract. On May 23, 2001, Superior answered in denial, asserting affirmative defenses and counterclaims under several theories. Baker and Superior began discovery and conducted settlement discussions. Settlement was not forthcoming, however, and discovery continued into 2002. During this period of time, Baker changed counsel. The parties attempted settlement discussion again in July 2002, again without success. Baker changed counsel again in 2003 and new counsel conducted discovery, repeating the discovery actions undertaken by prior counsel.

On August 29, 2003, in PL–99, Superior filed a lawsuit against Mega, the distributor of the machinery at issue, and Ferro, the machinery's manufacturer. Superior sought damages against Mega and Ferro in PL–99 under the same theories asserted against Baker in Superior's counterclaim in CP–403. Mega later asserted third-party indemnity claims against Baker and Ferro in PL–99. On March 23, 2004, CP–

403 and PL–99 were consolidated for purposes of discovery and pretrial proceedings, but otherwise remained separate actions under separate cause numbers. On December 29, 2004, for case CP–403, the trial court scheduled a pretrial conference for June 24, 2005 and set trial for August 22, 2005. On February 25, 2005, Ferro filed a motion to stay the proceedings in PL–99 because it had filed a bankruptcy action in Canada. The trial court entered a stay only with respect to PL–99. No one appeared at the scheduled June 24, 2005 pretrial conference. In an order entered that day, the trial court cancelled the August 22 trial date and directed Baker's counsel to "contact the Court to schedule a Case Management Conference when the parties have determined that this cause of action can again proceed." *Appellant's Appendix* at 85. Nothing happened until March 2006, when Superior was contacted by Baker's counsel. The parties exchanged letters and attended another settlement conference, but by the end of March 2006, action in the case again ceased.

On February 8, 2007, the trial courted entered an order entitled, as best we can tell, "Trial Rule 41(E) Notice and to Dismiss for Want of Prosecution", directing Baker to show cause why CP–403 and PL–99 should not be dismissed.[1] *Appellant's Appendix* at 98. After Baker's counsel received the show-cause order, she spoke with Baker about it. Counsel was informed that Baker did not have sufficient financial resources to proceed with litigation. Because of the show-cause order, however, Baker assured counsel it would obtain the resources to diligently do so.

On March 30, 2007, Baker filed a memorandum with the court stating,

> In response to this Court's Order to Show Cause, Plaintiff Baker Machinery, Inc. ("Baker") hereby seeks permission to continue this case in the court system. Due to financial constraints, Baker had been hopeful of and attempting to achieve an informal resolution of the case. However, it now appears that that endeavor is stalled.
>
> Baker now seeks to engage in active discovery, in order to move the case forward within the court system. Accordingly, it respectfully requests that this Court not dismiss the case but, rather, set a scheduling order for it to proceed.

*Id.* at 86. After reviewing Baker's memorandum in response to its show-cause order, the trial court scheduled a telephonic case management conference for May 3, 2007. On April 25, 2007, Mega and Superior filed a motion apparently entitled "Joint Motion of Mega Manufacturing Corporation and Superior Canopy Corporation for Reconsideration of the Sufficiency of Baker Machinery Inc.'s Response to Court's Trial Rule 41(E) Notice and to Dismiss for Want of Prosecution." *Appellant's Appendix* at 92. For brevity's sake, we will refer to this as Superior's motion to reconsider, although it includes Mega's motion as well. On May 10, 2007, the trial court granted Mega and Superior's motion, citing the following reasons:

> (1) [T]he length of the delay on the part of Baker Machinery Inc. to take any action to prosecute this cause;
>
> (5) the amount of prejudice to Superior Canopy Corporation and Mega Manufacturing Corporation caused by the delay,

---

**1.** We do not find the February 8, 2007 order in the appellate materials. We note that in its April 2, 2007 Notice of Case Management Conference, the trial court also referred to the order as "Court's Order to Show Cause Why This Case Should not be Dismissed", omitting reference to T.R. 41(E) in the caption.

i.e., evidence has become stale and in some instances unobtainable;

(6) the presence of a lengthy history of Baker Machinery, Inc.'s having deliberately proceeded in a dilatory fashion; and

(9) the fact that Baker Machinery Inc. has been stirred into action only by a threat of dismissal and not by any diligence on the part of Baker Machinery Inc.'s to prosecute this action[.]

*Id.* at 11.[2]  Baker appeals the order of dismissal.

### 1.

Baker contends the trial court erred in dismissing CP–403 and PL–99 because the motion requesting dismissal was untimely.

■■■■  We review dismissal of a cause of action under T.R. 41(E) for an abuse of discretion.  *Beard v. Dominguez,* 847 N.E.2d 1054 (Ind.Ct.App.2006), *trans. denied.*  In so doing, we consider whether the trial court's decision was against the logic and effect of the facts and circumstances;  " 'we will affirm the trial court if any evidence supports the trial court's decision.' "  *Id.* at 1059 (quoting *Gray v. Westinghouse Elec. Corp.,* 624 N.E.2d 49, 55 (Ind.Ct.App.1993), *trans. denied* ).

Baker's first challenge to the dismissal is largely procedural in nature.  It frames this issue in terms of the timeliness of Superior's motion to reconsider.  Baker explains, "[a]t no time during the pendency of this matter did Superior or Mega ever move the Circuit Court for dismissal until **after** Baker had already requested a scheduling conference, and the Court had granted that request."  *Appellant's Brief* at 7 (emphasis in original).  Baker contends a motion to dismiss under T.R. 41(E) may not be granted if the motion was submitted within sixty days after the alleg-

edly dilatory party "resumed prosecution" of its case, *id.,* which in this case occurred, according to Baker, when it requested that the trial court set a scheduling order. Baker cites *State v. McClaine,* 261 Ind. 60, 300 N.E.2d 342 (1973) in support of this contention.

In *McClaine,* the State filed an eminent domain action on January 9, 1958.  The case was dismissed pursuant to a T.R. 41(E) motion filed by the defendant-landowners on February 26, 1971.  We need not recount in detail the course of the proceedings.  It is enough for our purposes to note that there were two lengthy periods of inactivity on the State's part: from May 15, 1958 to April 4, 1967, and again from April 29, 1968 to February 17, 1971.  On the latter date—February 17, 1971—the State resumed prosecution of the case by filing a motion requesting a trial date.  The landowners' motion to dismiss was filed approximately nine days later.  Our Supreme Court reversed the order of dismissal upon the following rationale:

> A motion to dismiss for want of prosecution should not be granted if the plaintiff resumes diligent prosecution of his claim, even though, at some prior period of time, he has been guilty of gross negligence.
>
> The burden is clearly on the defendant to timely file a motion to dismiss pursuant to TR. 41(E).  That is to say, the defendant must file his motion after the sixty-day period has expired and before the plaintiff resumes prosecution.  The defendants in this case moved to dismiss after the plaintiff filed its request for trial and thereby failed to meet the requirements of TR. 41(E).

*Id.* at 344.  Baker contends that its request for a scheduling order, like the re-

quest for a trial date in *McClaine*, constituted a resumption of diligent prosecution of its case, thereby rendering Superior's subsequent request for reconsideration untimely.

Superior responds that Baker has misidentified what we will call the triggering event, i.e., the T.R. 41(E) prompt that raises the specter of dismissal for lack of action. Baker's argument identifies Superior's motion to reconsider as the triggering event. That is, Baker contends that its resumption of prosecution, i.e., the request to set a scheduling order, came *before* the triggering event, i.e., Superior's motion to reconsider. Thus, pursuant to *McClaine*, the trial court may not dismiss the action because the request to do so came after Baker had resumed prosecution of its case. Superior, on the other hand, contends that the triggering event was the trial court's February 8 order to show cause. Of course, that order predated Baker's request to set a scheduling order. Thus, according to Superior, *McClaine* does not represent an impediment to dismissing Baker's lawsuit pursuant to T.R. 41(E).

■ Considering Baker's and Superior's arguments together, it is apparent that the cases cited in support of each in fact stand for the same proposition. In addition to *McClaine*, discussed above, Baker cites *Hurt v. Polak*, 397 N.E.2d 1051, 1053 (Ind.Ct.App.1979) ("Auditor filed her T.R. 41(E) motion which was properly overruled because Auditor moved to dismiss the cause after Taxpayer filed her request for a trial setting, thus resuming prosecution"), and *D.M. v. C.H.*, 177 Ind.App. 600, 380 N.E.2d 1269 (1978) (holding that the trial court did not err in denying a T.R. 41(E) request to dismiss because the motion was filed after plaintiff had resumed prosecution of the matter by requesting a trial date). Superior adds to this list *Belcaster v. Miller*, 785 N.E.2d 1164 (Ind.Ct.

App.2003) (the trial court did not err in granting a T.R. 41(E) motion to dismiss because the plaintiffs filed their motion to set a trial date after one set of defendants filed the T.R. 41(E) motion to dismiss) and *Benton v. Moore*, 622 N.E.2d 1002 (Ind.Ct.App.1993) (the trial court erred in granting a motion to dismiss on the basis of T.R. 41(E) because the motion was filed after the plaintiff's motion to set a trial date was filed). All of these cases apply T.R. 41(E) in the same manner: "[t]he burden is clearly on the defendant to timely file a motion to dismiss pursuant to TR. 41(E). That is to say, the defendant must file his motion *after* the sixty-day period [of inactivity] has expired and before the plaintiff resumes prosecution." *Benton v. Moore*, 622 N.E.2d at 1005 (quoting *State v. McClaine*, 300 N.E.2d at 344) (emphasis in original). Was this time requirement met in the instant case? We conclude that it was.

In order to assess whether the time requirement was satisfied, we must first identify when the T.R. 41(E) prompt was issued. We first note that the purpose of T.R. 41(E) is to ensure that plaintiffs diligently pursue their claims. *Belcaster v. Miller*, 785 N.E.2d 1164. Our research reveals no cases in which the timeliness of a T.R. 41(E) prompt was considered where the prompt was an action initiated by the trial court upon its own motion, as opposed to a motion to dismiss submitted by the defendant. T.R. 41(E) clearly makes no distinction between one and the other, i.e.,

> Whenever there has been a failure to comply with these rules or when no action has been taken in a civil case for a period of sixty [60] days, the court, on motion of a party *or on its own motion* shall order a hearing for the purpose of dismissing such case. The court shall enter an order of dismissal at plaintiff's

costs if the plaintiff shall not show sufficient cause at or before such hearing. (Emphasis supplied.) Moreover, we note that the trial court's authority to dismiss a case for failure to prosecute under T.R. 41(E) stems not only from considerations of fairness for defendants, but is also rooted in the administrative discretion necessary for a trial court to effectively conduct its business. *See Gray v. Westinghouse Elec. Corp.*, 624 N.E.2d 49 (Ind.Ct.App. 1993), *trans. denied.* " 'Courts cannot be asked to carry cases on their dockets indefinitely[.]' " *Lee v. Pugh*, 811 N.E.2d 881, 885 (Ind.Ct.App.2004) (quoting *Benton v. Moore*, 622 N.E.2d at 1006). Thus, the T.R. 41(E) prompt that must precede the resumption of prosecution in order to authorize dismissal may take the form either of a motion to dismiss submitted by a defendant, or by an order issued by the trial court raising the possibility of dismissal for failure to prosecute, such as the February 8, 2007 show-cause order issued by the trial court in the instant case.

Having determined that the February 8 show-cause order represented a valid T.R. 41(E) prompt, we briefly address Baker's contention that the T.R. 41(e) prompt in this case was Superior's motion to reconsider. Simply put, the decision whether to dismiss Baker's lawsuit for failure to prosecute was raised sua sponte by the trial court via the court's February 8, 2007 show-cause order. Although the ultimate relief sought in Superior's subsequent motion to reconsider was indeed a T.R. 41(E) dismissal, that request related back to the trial court's show-cause order and did not constitute a new and independent T.R. 41(E) motion. In granting the motion to reconsider, the trial court's T.R. 41(E) dismissal represented a reconsideration of its earlier decision, not a decision on a new and separate motion to dismiss filed by Superior and Mega. Accordingly, the timeline requirement for T.R. 41(E) dismissal

in this case was satisfied. That is, the T.R. 41(E) prompt was filed before Baker resumed prosecution. There is no procedural impediment to dismissal under T.R. 41(E).

2.

■ We turn now to the merits of the trial court's decision to dismiss pursuant to T.R. 41(E). Baker contends the trial court did not properly consider and apply the factors relevant to dismissal under that rule. Generally, we balance several factors in determining whether the trial court abused its discretion by dismissing a case for failure to prosecute. They include:

The length of the delay; the reason for the delay; the degree of personal responsibility on the part of the plaintiff; the degree to which the plaintiff will be charged for the acts of his attorney; the amount of prejudice to defendant caused by the delay; the presence or absence of a lengthy history of having deliberately proceeded in a dilatory fashion; the existence and effectiveness of sanctions less drastic than dismissal which fulfill the purposes of the rules and the desire to avoid court congestion; the desirability of deciding the case on the merits; and the extent to which plaintiff has been stirred into action by a threat of dismissal as opposed to diligence on the plaintiff's part.

*Lee v. Friedman*, 637 N.E.2d 1318, 1320 (Ind.Ct.App.1994). The weight given to any of these factors depends on the facts particular to each case. *Beard v. Dominguez*, 847 N.E.2d 1054. "[A] lengthy period of inactivity may be enough to justify dismissal under the circumstances of a particular case, especially if the plaintiff has no excuse for the delay." *Lee v. Pugh*, 811 N.E.2d at 885.

■ When the trial court filed the February 8, 2007 show-cause order, it had

been almost six years since Baker filed its lawsuit. The most significant period of time for purposes of the issue before us is, of course, the period immediately preceding the issuance of the show-cause order. Baker's counsel acknowledged at the hearing on Superior's motion to reconsider, "I can't say that any great deal of activity took place during that time." *Appellant's Appendix* at 30. Indeed, between June 24, 2005, when the trial court issued an order directing Baker to contact the court to schedule a case management conference, and the February 8, 2007 show-cause order, Baker undertook no meaningful action in the case. As Superior's counsel explained,

> After mediation failed [in December 2004] we heard nothing. Finally at some point in early 2006 I got a phone call from another counsel for Baker Machinery.... I met with him and the principles [sic] of Baker Machinery, again, for purpose of negotiation. We sent settlement letter [sic] back and forth. The end of March, nothing. Nothing happened again until the Court kicked out its 41E notice. Nothing is happening in this case.

*Id.* at 23. Baker's counsel at the hearing displayed commendable candor in admitting to the court, "We have allowed the case to sit dormant. We have done that because, frankly, financial considerations of our client. They have been unable to afford to go forward with this action to the Court for the last two years." *Id.* at 26. In fact, our review of the appendix reveals that financial inability to pay counsel was the primary rationale offered by Baker in explaining its lack of action. Baker suggests that Superior was complicity in creating this situation, deeming it "most significant [ ]" that "Mega and Superior had managed to explode this case to such a level that the financial burden weighed heavily on Baker, providing an impediment

to move forward." *Appellant's Brief* at 10. Even assuming for the sake of argument that this is true, Baker does not contend that Superior or Mega ran afoul of the applicable rules of procedure in prosecuting its case.

Although a lack of financial resources to pay legal fees is no doubt occasionally a practical impediment to diligent prosecution of a lawsuit, it is not sufficient justification for inaction so as to avoid the rigors of T.R. 41(E), and it does not excuse Baker's lack of activity between June 24, 2005 and March 30, 2007. We note that the time between the filing of the lawsuit and the failed December 2004 mediation saw little progress in the lawsuit as well.

■ We briefly address Baker's claim that "the Circuit Court was well aware the case went dormant after Ferro's motion to stay because of its bankruptcy." *Appellant's Brief* at 10. If this is meant as a claim that Baker could not prosecute its case against Superior and Mega because of Ferro's bankruptcy action, the claims fails. First, a bankruptcy stay was filed in PL–99, not CP–403. Thus, it did not apply to the lawsuit filed by Baker against Superior. Second, a bankruptcy stay does not prevent non-bankrupt parties in the same action from proceeding with the litigation. It is clearly established that the automatic stay does not apply to non-bankrupt co-defendants of a debtor "even if they are in a similar legal or factual nexus with the debtor." *Seiko Epson Corp. v. Nu–Kote Intern., Inc.*, 190 F.3d 1360, 1364 (Fed.Cir. 1999) (quoting *Maritime Elect. Co. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir.1991)); *see also, e.g., Marcus, Stowell & Beye Gov't Sec., Inc. v. Jefferson Inv. Corp.*, 797 F.2d 227, 230 n. 4 (5th Cir.1986) ("[t]he well established rule is that an automatic stay of judicial proceedings against one defendant does not apply

to proceedings against co-defendants"). Accordingly, the stay entered as a result of Ferro's bankruptcy action did not justify Baker's inactivity.

With respect to prejudice to Superior and Mega that was occasioned by the delay, Mega's counsel explained: "I share this with [Superior's counsel], the big concern, this all goes back to transactions, I think that occurred back in 1999, possibly 1998, I am very concerned about being able to find evidence or documents, witnesses that can still testify, or are even available, about this case." *Appellant's Appendix* at 24. Superior's counsel expressed doubt that he would even be able to locate his expert witness. Thus, Superior and Mega demonstrated that they were prejudiced by Baker's dilatory conduct in prosecuting its case.

In dismissing Baker's case, the trial court considered the factors identified in *Lee v. Friedman*, 637 N.E.2d 1318 and concluded that (1) Baker had taken an unreasonable amount of time to take any action in prosecuting its case, (2) Superior and Mega had suffered prejudice as a result of the delay in that evidence has become stale and some witnesses could not be found, (3) generally, Baker had a lengthy history of having deliberately proceeded in a dilatory fashion in this lawsuit; and (4) Baker was "stirred into action" only by a threat of dismissal and not by diligence on its (Baker's) part. *Appellant's Appendix* at 11. We conclude that the evidence supports those findings and that the findings are legally sufficient to support the trial court's T.R. 41(E) dismissal of Baker's lawsuit.

Judgment affirmed.

MATHIAS, J., and ROBB, J., concur.