## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 24 2017, 8:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ryan Bower
New Albany, Indiana

ATTORNEYS FOR APPELLEE

Kristi L. Fox
Steven A. Gustafson
Fox Law Offices, LLC
New Albany, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Erin McCallion-Holmes,

*Appellant-Plaintiff,*

v.

Sherrie Holmes,

*Appellee-Defendant.*

January 24, 2017

Court of Appeals Case No.
10A01-1512-CT-2290

Appeal from the Clark Circuit Court

The Honorable Susan L. Orth, Special Judge

Trial Court Cause No.
10C01-1207-CT-111

**Mathias, Judge.**

[1] Erin McCallion-Holmes ("Erin") filed a complaint in Clark Circuit Court against Sherrie Holmes ("Sherrie") alleging that Sherrie had committed the torts of malicious prosecution and abuse of process. The trial court granted

Sherrie's motion to dismiss the complaint for failure to prosecute. Erin filed a motion to correct error, which the trial court denied. Erin appeals and presents two issues for our review, which we restate as: (1) whether the trial court erred by denying Erin's motion to correct error as untimely without considering the motion on its merits, and (2) whether the trial court abused its discretion when it dismissed Erin's complaint.

We affirm.

## Facts and Procedural History

Sherrie and Michael Holmes ("Michael") were married and had a son, A.H., but later divorced. Michael subsequently married Erin, who is now A.H.'s stepmother. Sherrie has primary physical custody of A.H. In July 2010, when A.H. was eleven years old, Michael filed a motion to modify custody, seeking to obtain primary physical custody of A.H.

In October 6, 2010, during the pendency of the motion to modify custody, Sherrie filed a petition for a protective order against Erin on behalf of A.H., claiming that Erin had pushed A.H. into furniture, scratched his arm, and made the child stay out in the cold until his father came home.

Neither party has informed us whether the petition was ultimately granted by the dissolution court. However, this appears unlikely, because on July 5, 2012, Erin filed the complaint at issue in this case, claiming that Sherrie's action of filing for a protective order was merely a sham intended to aid Sherrie in her

efforts to retain primary physical custody of A.H. Specifically, Erin's complaint provided in relevant part:

24. At the time Sherrie filed her Petition, she knew the allegations contained in the Petition were false.

25. Namely, Sherrie knew, when she filed that Petition, that Erin had not "repeatedly push[ed] [A.H.] around into furniture", but had only pushed him once to sit in a cushioned chair.

26. Sherrie knew, when she filed that Petition, that Erin had not "watched child cry and shiver from cold inside of house," but that [A.H.] only had to go outside for ten minutes or less until his father talked to him.

27. Sherrie knew, when she filed the Petition, that even if [A.H.] "had scratches on his arm," that [A.H.] was not claiming that Erin deliberately scratched him.

28. At the time Sherrie filed this Petition, she knew that Michael's custody modification was still pending.

29. Because Sherrie told her therapist the day after this incident that she was going to try and get Michael's visitation suspended, that shows that Sherrie made these false allegations in the Petition as retaliation against Michael, and to try and get an advantage in the pending custody case.

30. Because [A.H.] had been suspended from school for behavioral problems the same day as this alleged incident, Sherrie made these false allegations in the Petition to try and deflect the fact that it would be a negative factor against her in the pending custody case if [A.H.]was being suspended from school while she was the primary residential parent.

> 31.   By knowingly and intentionally making these false allegations in the Petition for her own personal gain, Sherrie committed the torts of malicious prosecution and/or abuse of process and/or wrongful use of civil proceedings.

Appellant's App. p. 56.

[6] After receiving an extension of time, Sherrie filed her answer on August 10, 2012, which included a motion to dismiss based on her purported immunity from suit. Sherrie also filed a motion for change of judge, which the trial court granted on August 16, 2012. Erin responded to the motion to dismiss on August 28, 2012. The trial court initially scheduled a hearing on the motion to dismiss but later vacated this hearing based on the motion for change of judge. Sherrie and Erin made their strikes from the list of three judges on September 7 and 13, 2012, respectively, and the special judge assumed jurisdiction over the case on September 27, 2012. The case then sat dormant for almost two years.

[7] The next entry on the chronological case summary ("CCS") is on June 6, 2014, when the trial court ordered a pretrial conference to be held on July 10, 2014, apparently on Erin's motion. *See* Tr. p. 10 (noting that Erin requested the pretrial conference). On Sherrie's motion, the pretrial conference was rescheduled and held on August 11, 2014. On September 25, 2014, Erin filed a response to Sherrie's motion to dismiss. Sherrie responded by filing a surreply in support of her motion to dismiss on November 5, 2014. That same day, the trial court set a hearing on the motion to dismiss to be held on December 29, 2014. After holding the hearing on the motion to dismiss on December 29,

2014, the trial court, on January 7, 2015, entered an order taking the motion to dismiss under advisement, concluding that the motion was premature at the time.

[8] Erin made no further filings or motions with the trial court for over two months. Accordingly, on March 25, 2015, Sherrie filed two motions: a Trial Rule 37 motion for sanctions for Erin's alleged discovery violations and a motion to dismiss for failure to prosecute under Trial Rule 41. Erin did not file a response to this motion to dismiss. On April 16, 2015, the trial court set a hearing on the motion to dismiss to be held on May 22, 2015. On May 11, 2015, well over a month after Sherrie filed her motion to dismiss, Erin's attorney filed a motion to withdraw his appearance. The trial court granted this motion a week later.

[9] On May 22, 2015, the trial court conducted its scheduled hearing on Sherrie's motion to dismiss for failure to prosecute. Erin failed to appear. After hearing a brief argument by Sherrie's counsel, the trial court granted the motion to dismiss. From the bench, the trial court preliminarily ordered Erin to pay $5,500 in attorney's fees to Sherrie, but ordered Sherrie's counsel to submit an affidavit to support his fee claim. On June 25, 2015, Sherrie's counsel filed an affidavit in support of his claim for attorney's fees in the amount of $5,320.

[10] On July 22, 2015, the trial court entered a written order granting Sherrie's motion to dismiss,[1] but awarding her attorney's fees in the amount of $3,000. The parties have also included in the record an order, signed the same day as the order awarding $3,000 in attorney's fees, which awarded Sherrie $5,320 in attorney's fees. This order, however, does not appear to have been entered into the CCS. The trial court remedied this confusion on August 13, 2015, when it entered an amended order awarding Sherrie $5,320 in attorney's fees.

[11] On September 9, 2015, Erin filed a motion for relief from judgment, or in the alternative, a motion to correct error. Erin also had new counsel file an appearance on her behalf. On September 21, 2015, the trial court entered an order setting Erin's motion for a hearing to be held on November 9, 2015. After holding a hearing on Erin's motion, the trial court entered an order on December 3, 2015, denying Erin's motion. Specifically, the trial court determined that Erin's motion to correct error was untimely and that her motion for relief from judgment should be denied. Erin now appeals.

## Discussion and Decision

[12] Erin first contends that the trial court erred by failing to consider her motion to correct error on the merits. Erin insists that her motion to correct error was timely filed and that the trial court therefore should have considered it on its merits. Erin's claim that her motion to correct error was timely filed is based on

---

[1] The trial court dismissed the case with prejudice. *See Lee v. Pugh*, 811 N.E.2d 881, 887 (Ind. Ct. App. 2004) ("A dismissal for failure to prosecute is a dismissal with prejudice unless the trial court provides otherwise.").

her position that the trial court's order of July 22, 2015, which granted Sherrie's motion to dismiss, was not final because the trial court signed two orders, one that awarded Sherrie $3,000 in attorney's fees and another that awarded her $5,320 in attorney's fees. Sherrie claims this issue was not finalized until the trial court entered its amended order on August 13 clarifying that it intended to award Sherrie $5,320 in attorney's fees.

[13] Even if we assume *arguendo* that Erin is correct and that her motion to correct error was timely filed, we decline her request to remand so that the trial court can consider her claim on the merits because her claim fails on its merits. Erin argues that the trial court erred in granted Sherrie's motion to dismiss for failure to prosecute. Indiana Trial Rule 41(E) provides:

> **Failure to prosecute civil actions or comply with rules.**
> Whenever there has been a failure to comply with these rules or when no action has been taken in a civil case for a period of sixty [60] days, the court, on motion of a party or on its own motion shall order a hearing for the purpose of dismissing such case. The court shall enter an order of dismissal at plaintiff's costs if the plaintiff shall not show sufficient cause at or before such hearing. Dismissal may be withheld or reinstatement of dismissal may be made subject to the condition that the plaintiff comply with these rules and diligently prosecute the action and upon such terms that the court in its discretion determines to be necessary to assure such diligent prosecution.

[14] The purpose of Trial Rule 41(E) is to ensure that plaintiffs diligently pursue their claims and to provide an enforcement mechanism whereby a defendant, or the court, can force a recalcitrant plaintiff to push his case to resolution. *Olson v.*

*Alick's Drugs, Inc.*, 863 N.E.2d 314, 319 (Ind. Ct. App. 2007) (citing *Belcaster v. Miller*, 785 N.E.2d 1164, 1167 (Ind. Ct. App. 2003)).

[15] The burden of moving the litigation forward is on the plaintiff, not the court or the defendant. *Olson,* 863 N.E.2d at 319. "It is not the duty of the trial court to contact [plaintiff's] counsel and urge or require him to go to trial, even though it would be within the court's power to do so." *Belcaster*, 785 N.E.2d at 1167 (quoting *Benton v. Moore*, 622 N.E.2d 1002, 1006 (Ind. Ct. App. 1993)). Trial courts are not required to carry cases on their dockets indefinitely. *Olson*, 863 N.E.2d at 319. Additionally, the rights of the adverse party should also be considered, and she should not be left with a lawsuit hanging indefinitely over her head. *Id.*

[16] When reviewing whether a trial court has abused its discretion in ruling on such a motion, we consider several factors, which include:

> (1) the length of the delay; (2) the reason for the delay; (3) the degree of personal responsibility on the part of the plaintiff; (4) the degree to which the plaintiff will be charged for the acts of his attorney; (5) the amount of prejudice to the defendant caused by the delay; (6) the presence or absence of a lengthy history of having deliberately proceeded in a dilatory fashion; (7) the existence and effectiveness of sanctions less drastic than dismissal which fulfill the purposes of the rules and the desire to avoid court congestion; (8) the desirability of deciding the case on the merits; and (9) the extent to which the plaintiff has been stirred into action by a threat of dismissal as opposed to diligence on the plaintiff's part.

*Id.* at 320. The weight any one of these factors has in a particular case depends on the facts and circumstances of that case. *Id.*

[17] The trial court's ruling on a Trial Rule 41(E) motion to dismiss is reviewed for an abuse of discretion. *Id.* The trial court abuses its discretion when its decision is against the logic and effect of the facts and circumstances before it. *Belcaster*, 785 N.E.2d at 1167. On appeal, this court will affirm the trial court if any evidence supports its decision. *Id.*

[18] Here, Erin first argues that she had resumed prosecution of her case before Sherrie filed her Trial Rule 41(E) motion to dismiss. *See Baker Mach., Inc. v. Superior Canopy Corp.*, 883 N.E.2d 818, 821 (Ind. Ct. App. 2008) ("'A motion to dismiss for want of prosecution should not be granted if the plaintiff resumes diligent prosecution of his claim, even though, at some prior period of time, he has been guilty of gross negligence.'"), *trans. denied* (quoting *State v. McClaine*, 261 Ind. 60, 63, 300 N.E.2d 342, 344 (1973)). This is true to an extent.

[19] To be sure, the largest period of inactivity in Erin's prosecution of her case occurred between September 13, 2012, when Erin filed her strike from the list of three judges, and June 6, 2014, when Erin requested a pretrial conference. However, this was not Erin's only period of inactivity.

[20] Erin filed a reply to Sherrie's motion to dismiss, which was based on Sherrie's alleged immunity, on September 25, 2014. Also, Erin participated in the December 29, 2014 hearing held on this motion. The trial court then entered an order on January 7, 2015, concluding that the immunity issue was not yet ripe

and taking it under advisement. Thereafter, Erin failed to take any further action in the case. Eventually, on March 25, 2015, over two months after the trial court's January 7 order, Sherrie filed her motion to dismiss based on Trial Rule 41(E). Still, Erin did not respond. Indeed, Erin did not appear at the hearing on the motion to dismiss or take any action in this case again until September 9, 2015, when she filed her motion for relief from judgment/motion to correct error. Thus, based on our review of the CCS, Erin made no effort to prosecute her case for over nine months. We cannot say that Erin had resumed diligent prosecution of her claim. *See Baker Mach., Inc.*, 883 N.E.2d at 821.

[21] Erin also claims that the case was "active" because the parties were engaged in the process of discovery. Specifically, she notes that she received a letter from Sherrie's counsel on February 26, 2015, in which Sherrie threatened to file a request for discovery sanctions based on what she took as incomplete and inadequate responses to Sherrie's discovery requests. Sherrie then filed a request for discovery sanctions, albeit in the wrong court.[2] Erin also claims to have received another discovery request on February 26, 2015, that was never filed with the trial court. Based on her receipt of these discovery requests, Erin claims that her case was active. We disagree.

[22] The fact that Sherrie, the defendant, was attempting to go forward with resolution of the case does not mean that Erin, the plaintiff, was actively

---

[2] Sherrie mistakenly filed a request for discovery sanctions in Floyd Superior Court 1, the court where the dissolution and child custody action between Sherrie and Michael was heard.

prosecuting her claim. Indeed, as noted above, even after Erin reactivated her case in 2014, another lull in activity by Erin followed the trial court's January 7, 2105 order. Under these facts and circumstances, we cannot fault the trial court for rejecting Erin's claim that her case was active.

[23] With regard to the factors enumerated in *Olsen*, we note that Erin's appellate argument addresses at most two of these factors: the reason for the delay and the extent to which she can be charged with the action of her attorney. Erin specifically argues that there were valid reasons for her delay and for her failure to appear at the hearing on Sherrie's motion to dismiss, i.e., that her counsel had recently withdrawn and that her home was damaged by high winds on March 15, 2015.

[24] We note, however, that Sherrie filed her motion to dismiss on March 25, 2015, and Erin's counsel was served with this motion. Erin's counsel did not withdraw from the case until May 18, 2015. Thus, Erin's counsel, and therefore Erin, had notice of the motion to dismiss and the hearing set thereon. *See Washmuth v. Wiles*, 12 N.E.3d 938, 941 (Ind. Ct. App. 2014) (noting that notice or information given to an attorney constitutes notice to the attorney's client) (citing *Reynolds v. State*, 463 N.E.2d 1087, 1088 (Ind. 1984)); *Lovko v. Lovko*, 179 Ind. App. 1, 14, 384 N.E.2d 166, 174 (1978) ("Notice to an attorney is notice to the client who employs him."). Accordingly, the trial court did not abuse its discretion by failing to accept the withdrawal of Erin's counsel as an excuse for her failure to prosecute her case or failure to appear at the hearing on the motion to dismiss.

[25] Although not directly addressed by Erin, we also consider the remaining factors enumerated in *Olson*. The length of the delay here was not exceptionally long, but more than two months had passed between the trial court's order and Sherrie's motion to dismiss for failure to prosecute. *See Lee v. Pugh*, 811 N.E.2d 881, 886 (Ind. Ct. App. 2004) (affirming trial court's dismissal of plaintiffs' claims for failure to prosecute where the plaintiffs failed to take any action in the case for over ninety days). Moreover, Erin had filed nothing with the trial court since the August 11, 2014 pretrial conference other than a response to Sherrie's motion to dismiss based on her alleged immunity. The other actions listed in the CCS were taken by Sherrie.

[26] With regard to the degree of personal responsibility and the degree to which she should be charged with the actions (or failures to act) of her attorney, we note that, when Erin's attorney moved to withdraw his appearance, he specifically noted that Erin had failed to cooperate with him. Appellant's App. p. 32. Sherrie notes that she has been prejudiced by the delay in this case, which has now dragged on for over four years. Although we acknowledge that Erin reactivated her case when she requested a pretrial conference in 2014, we cannot overlook the history of delay in this case, which includes a period of dormancy that lasted almost two years with no action being taken by Erin. Almost all of Erin's recent action in this case was spurred by Sherrie's motion to dismiss. Even then, Erin did not respond to the motion to dismiss or appear at the hearing on the motion.

Although sanctions less severe than dismissal may have been available, and we always prefer that cases be decided on their merits, we cannot say that the trial court abused its discretion when it chose to dismiss Erin's action instead of choosing some lesser sanction. *See United Bhd. of Carpenters, Local 2371 v. MEG Mfg. Corp.*, 963 N.E.2d 602, 607 (Ind. Ct. App. 2012) ("[T]he court need not impose a sanction less severe than dismissal where the record of dilatory conduct is clear."). Accordingly, we affirm the order of the trial court denying Erin's motion for relief from judgment/motion to correct error.

Affirmed.

Robb, J., and Brown, J., concur.