Donn OLSON, Appellant–Plaintiff,

v.

ALICK'S DRUGS, INC, and Georgia Luks–McFarland, Appellees–Defendants.

No. 71A03–0606–CV–274.

Court of Appeals of Indiana.

Jan. 16, 2007.

Publication Ordered Feb. 20, 2007.

Rehearing Denied May 10, 2007.

Timothy J. O'Connor, O'Connor & Auersch, Indianapolis, IN, Attorney for Appellant.

Timothy S. Shelly, Dean E. Leazenby, William L. Law, III, Warrick & Boyn, LLP, Elkhart, IN, Attorneys for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Plaintiff, Donn Olson (Olson), appeals the trial court's dismissal of his Complaint for Damages against Appellees–Defendants, Alick's Drug Stores, Inc., Nafe Alick, Jeannine Alick (collectively, Alick's), and Georgia Luks–McFarland (Luks–McFarland).

We affirm.

### ISSUES

Olson raises two issues on appeal, which we restate as:

(1) Whether the trial court erred in dismissing his case for failure to prosecute under Ind. Trial Rule 41(E); and

(2) Whether the trial court erred in refusing to reinstate his Complaint under Ind. Trial Rule 60(B).

### FACTS AND PROCEDURAL HISTORY

In May of 1998, Olson filed an employment discrimination claim against his former employers, Alick's, in the United States District Court for the Northern District of Indiana (federal court).[1] After initiation of the claim, Olson's attorney withdrew and he retained Luks–McFarland to represent him. On June 28, 2002, the parties reached a confidential settlement by oral agreement, whereby Alick's agreed to pay Olson $120,000.00 for settlement of all claims—present and future—related to the employment dispute. Thereafter, Luks–McFarland drafted a written settlement agreement in accordance with the agreed upon terms. Alick's signed the agreement and returned it to Luks–McFarland with a check for the amount of $120,000.00. Alick's counsel directed Luks–McFarland to deliver the check to Olson after he signed the settlement agreement and the suit was dismissed.

Consequently, Luks–McFarland presented the settlement agreement to Olson; however, Olson found the written terms different from the terms of the oral agreement and refused to sign the agreement. Olson demanded that Luks–McFarland hand over the check, but due to Alick's request, Luks–McFarland did not do so. After Olson threatened to report Luks–McFarland to the disciplinary commission, Luks–McFarland withdrew as his counsel. Olson then filed a transcript of the oral confidential settlement agreement with the federal court.

On September 6, 2002, Alick's filed a motion with the federal court seeking to hold Olson accountable for breaching the confidentiality clause of the agreement and to compel Luks–McFarland to return the settlement check to them. On November 1, 2002, the federal court issued a memorandum and order concluding that the oral settlement agreement reached on June 28, 2002 was valid and enforceable. In addition, the trial court awarded Alick's liquidated damages for Olson's breach of confidentiality, but denied Alick's motion to compel Luks–McFarland to return the check. On November 5, 2002, Alick's stopped payment on the settlement check

---

1. *See Donn W. Olson v. Alick's Drugs, Inc., et al.,* Cause No. 3:98–CV–0232 RM.

because the amount of the check no longer reflected the amount owed to Olson. On January 7, 2003, the federal court issued a memorandum and order reducing the terms of the settlement agreement to a final judgment.

On or around January 21, 2003, Olson filed a motion in federal court seeking to compel Luks–McFarland to deliver the settlement check to him. On January 27, 2003, Luks–McFarland filed a Verified Petition Seeking to Deposit the Settlement Check with the federal court. On March 6, 2003, the federal court ordered Luks–McFarland to deliver the check to Olson, but the check was statutorily stale by that time because more than six months had passed since it was issued. Thereafter, Alick's attempted on several occasions to send a new settlement check, less the liquidated damages, to Olson. Each time, Olson refused to accept the check. Instead, Olson paid the liquidated damages separately to Alick's. Upon receipt of the liquidated damages, Alick's attempted to tender a second settlement check, for the full and original amount, but Olson again refused to accept it. Alick's then sought the federal court's permission to deposit the monies with the court clerk, a request that the federal court granted on April 5, 2004. After Alick's deposited the amount in the clerk's office, the office mailed the check to Olson. Yet, Olson still refused to accept the check.

On July 13, 2004, Olson filed a Complaint for damages in state court (the trial court) against Alick's for unlawfully stopping payment on the original settlement check, and against Luks–McFarland for unlawfully converting the same check by refusing to tender it to Olson. Alick's and Luks–McFarland filed their Answers in August and October, respectively. On May 9, 2005, the trial court granted Olson's counsel, Jason Shartzer (Shartzer),

leave to withdraw from the case. On June 16, 2005, the trial court granted Olson's subsequent counsel, Robert J. Nice (Nice), leave to withdraw from the case. On December 1, 2005, Luks–McFarland filed a Motion to Dismiss for Failure to Prosecute. On December 19, 2005, Alick's filed a likewise motion. On January 3, 2006, the trial court held a hearing on these motions. At the hearing, Michigan attorney Michael Reynolds (Reynolds) requested to argue on Olson's behalf, but the trial court denied his request because Reynolds had not previously sought leave to be admitted *pro hac vice*. Olson proceeded *pro se*.

On February 13, 2006, the trial court entered its Order of Dismissal, stating in pertinent part:

The [c]ourt notes that the issues in this case were finally closed on October 15, 2004, when [Luks–McFarland] filed her [A]nswer to [Olson's] Amended Complaint. The [c]ourt also notes that [Olson's] substitute counsel withdrew on June 16, 2005, and that [Olson] has been without counsel of record since that date. At the hearing on the Motion to Dismiss, an oral appearance on behalf of [Olson] by Michigan attorney [Reynolds] was attempted without any effort to comply with Admission and Disciplinary Rule 3, Section 2, which attempted appearance was refused by the [c]ourt.

[Olson] in his written Response filed with the [c]ourt reported that he had numerous early contacts with attorney Reynolds going back as far as May 26, 2005. He also indicated in his Response that attorney Reynolds was "retained summer 2005." [Olson] further says that [Alick's and Luks–McFarland] have failed to provide discovery responses to his discovery requests and that such failure significantly contributed to his unexplained delay in [prosecuting] this mat-

ter. Most significantly, [Olson] has failed to take any further action to prosecute this matter.

[Olson's] failure to obtain substitute counsel over that significant period of time rests squarely upon [him]. Any issue of a *pro hac vice* appearance could have been handled in a timely [manner]. [Olson's] failure to exercise any of his available discovery remedies regarding his alleged failure to secure discovery responses also rests squarely upon [him]. He has failed to take any positive steps to move his case forward. In summary, it appears that [Olson] has done nothing to diligently prosecute his claim. He has shown no good cause why this matter should not be dismissed.

... [Olson's] Complaint .... hereby, is, dismissed with prejudice.

(Appellant's App. pp. 4–5).

Olson now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Trial Rule 41(E) Dismissal for Failure to Prosecute*

First, Olson argues that the trial court improperly granted Alick's and Luks–McFarland's Motions to Dismiss for Failure to Prosecute. Specifically, Olson contends that the trial court erred in concluding that he had not taken any action in the case since his attorney, Nice, withdrew in June of 2005.

■ We will reverse a Trial Rule 41(E) dismissal for failure to prosecute only in the event of a clear abuse of discretion. *Belcaster v. Miller,* 785 N.E.2d 1164, 1167 (Ind.Ct.App.2003), *trans. denied.* An abuse of discretion occurs if the decision of the trial court is against the logic and effect of the facts and circumstances before it. *Id.* We will affirm if there is any

evidence that supports the trial court's decision. *Id.*

Trial Rule 41(E) provides in pertinent part:

[W]hen no action has been taken in a civil case for a period of sixty [60] days, the court, on motion of a party or on its own motion shall order a hearing for the purpose of dismissing such case. The court shall enter an order of dismissal at plaintiff's costs if the plaintiff shall not show sufficient cause at or before such hearing.

■ The purpose of this rule is "to ensure that plaintiffs will diligently pursue their claims," and to provide "an enforcement mechanism whereby a defendant, or the court, can force a recalcitrant plaintiff to push his case to resolution." *Id.* (quoting *Benton v. Moore,* 622 N.E.2d 1002, 1006 (Ind.Ct.App.1993), *reh'g denied* ). "The burden of moving the litigation is upon the plaintiff, not the court. It is not the duty of the trial court to contact counsel and urge or require him to go to trial, even though it would be within the court's power to do so." *Belcaster,* 785 N.E.2d at 1167 (quoting *Benton,* 622 N.E.2d at 1006). "Courts cannot be asked to carry cases on their dockets indefinitely and the rights of the adverse party should also be considered. He should not be left with a lawsuit hanging over his head indefinitely." *Belcaster,* 785 N.E.2d at 1167 (quoting *Hill v. Duckworth,* 679 N.E.2d 938, 939–40 (Ind. Ct.App.1997)).

■ We balance several factors when determining whether a trial court abused its discretion in dismissing a case for failure to prosecute. *Office Environments, Inc. v. Lake States Ins. Co.,* 833 N.E.2d 489, 494 (Ind.Ct.App.2005). These factors include: (1) the length of the delay; (2) the reason for the delay; (3) the degree of personal responsibility on the part of the plaintiff; (4) the degree to which the plain-

tiff will be charged for the acts of his attorney; (5) the amount of prejudice to the defendant caused by the delay; (6) the presence or absence of a lengthy history of having deliberately proceeded in a dilatory fashion; (7) the existence and effectiveness of sanctions less drastic than dismissal which fulfill the purposes of the rules and the desire to avoid court congestion; (8) the desirability of deciding the case on the merits; and (9) the extent to which the plaintiff has been stirred into action by a threat of dismissal as opposed to diligence on the plaintiff's part. *Id.* The weight any particular factor has in a particular case depends on the facts of that case. *Id.*

Here, Olson asserts that he was not recalcitrant in pursuing his claims against Alick's and Luks–McFarland. Even though he had no attorney of record from June to December of 2005, and the docket shows no substantive activity in the case since October of 2004, Olson contends that discovery was taking place throughout that time and that he retained replacement attorney, Reynolds, in June of 2005. Further, even if there was a delay of six months, Olson argues it was insignificant and that he has demonstrated a satisfactory reason for the inactivity, *i.e.,* his difficulty in obtaining substitute counsel after Nice withdrew.

While we agree that a six-month delay is not among the most egregious periods of inactivity that this court has seen, we have upheld dismissals under circumstances of a shorter delay. *See Lee v. Pugh,* 811 N.E.2d 881, 886 (Ind.Ct.App. 2004) (where this court affirmed a Trial Rule 41(E) dismissal following a three-month period of delay). Additionally, we observe that under the rule, only a delay of sixty days is required. T.R. 41(E); *Lee,* 811 N.E.2d at 886. Here, as previously mentioned, Olson was without counsel of record for six months prior to the trial

court's dismissal, and the case docket is void of any activity since October of 2004 other than withdrawals of Olson's' attorneys. Also, at the hearing on the motions to dismiss, Alick's counsel stated that no meaningful actions outside of the actions cited in the docket had transpired in the case since Olson's deposition was taken and discovery requests were submitted in early 2005. Thus, we conclude that the questions of when Olson retained Reynolds and whether any discovery was actually taking place during the delay, are insignificant. In our review, the period of delay in this case—which is likely more than just the six months Olson was without counsel of record—is inadequate to reverse the trial court's dismissal.

Olson also claims he bore little personal responsibility for the period of inactivity as he was unaware that Reynolds would not be able to represent him in an Indiana court. We disagree that Reynolds' failure to follow *pro hac vice* procedure is entirely responsible for Olson's delay. At the Trial Rule 41(E) hearing, Reynolds stated: "[Olson] asked me to appear here this morning and ask the [c]ourt's indulgence to speak in his behalf for *this one occasion* . . . . It was a last-minute request to appear, mostly because of the result of the filing of this motion to dismiss." (Transcript p. 3). In our view, regardless of the fact that Reynolds should have previously asked the trial court for permission to represent Olson *pro hac vice,* Reynolds' comments show that Olson was undoubtedly stirred into action by the threat of a dismissal as opposed to genuine diligence. *See Office Environments, Inc.,* 833 N.E.2d at 494. In addition, as highlighted by the trial court in its Order of Dismissal, we conclude that the burden of finding proper substitute counsel, and the burden of moving along the litigation process generally, falls squarely on the plain-

tiff. Accordingly, we agree with the trial court that Olson bore some, if not all, of the responsibility for the delay in his case.

■ Furthermore, Olson argues that neither Alick's nor Luks–McFarland was prejudiced by the delay and that there is no evidence of his historically or deliberately acting in a dilatory fashion. Again, we disagree. If we go back to the underlying claim in this case—Olson's discrimination suit—the matter has been in litigation for over eight years. The record clearly establishes that Olson is responsible for extending the litigation. In our view, the length of this litigation should have forced Olson to diligently pursue his claim more so than the average plaintiff. Alick's and Luks–McFarland have undoubtedly been prejudiced as issues related to this cause of action have been hanging over their heads for nearly a decade.

■ Finally, Olson contends that the more appropriate measure by the trial court would have been a verbal warning rather than a dismissal. However, despite the existence of less drastic sanctions, we are not persuaded that any less severe sanction would have been effective in Olson's case. Our review of the record shows that Olson has previously requested and been granted actions by a court, be it state or federal, and then subsequently exhibited dissatisfaction with the outcome. In addition, even though we acknowledge that there is a preference for deciding cases on the merits, Olson's series of lawyers and unwillingness to resolve this situation has likely lost him credibility at this point. *See Belcaster,* 785 N.E.2d at 1168. Therefore, in conclusion, our review of the record leads us to side with the trial court

in its determination that a Trial Rule 41(E) dismissal was proper.

## II. *Motion for Relief from Order of Dismissal*

Olson also argues that the trial court abused its discretion when it denied his Motion to Correct Error and Motion for Relief from Order of Dismissal. Specifically, Olson contends that his dismissal should be excused because he was surprised by Reynolds' inability to represent him and his Complaint sets forth meritorious claims.

■ "A dismissal for failure to prosecute or to comply with our Trial Rules pursuant to Trial Rule 41(E) is a dismissal with prejudice unless the trial court provides otherwise." *Indiana Ins. Co. v. Insurance Co. of North America,* 734 N.E.2d 276, 278 (Ind.Ct.App.2000), *reh'g denied, trans. denied* (quoting *Browning v. Walters,* 620 N.E.2d 28, 32 (Ind.Ct.App.1993)). Consequently, a motion made under Trial Rule 41(E) to reinstate a cause after a dismissal must be made pursuant to Trial Rule 60(B).[2] *Id.* A motion made under Trial Rule 60(B) is addressed to the equitable discretion of the trial court, circumscribed by the eight categories listed in Rule 60(B). *Lee,* 811 N.E.2d at 887. The grant or denial of the T.R. 60(B) motion will be reversed only when the trial court has abused its discretion. *Indiana Ins. Co.,* 734 N.E.2d at 278. In ruling on a T.R. 60(B) motion, the trial court is required to "balance the alleged injustice suffered by the party moving for relief against the interests of the winning party and society in general in the finality of litigation." *Id.* at 278–79 (quoting *Chelovich v. Ruff & Silvian Agency,* 551 N.E.2d 890, 892 (Ind.Ct.App.1990)).

**2.** Additionally, Trial Rule 41(F) provides in relevant part: "A dismissal with prejudice may be set aside by the court for the grounds and in accordance with the provisions of Rule 60(B)."

In arguing that the trial court erred in denying this motion, Olson first relies on our opinion in *Flying J, Inc. v. Jeter*, 720 N.E.2d 1247, 1249 (Ind.Ct.App.1999), where we held that a breakdown in communication between an attorney and client constituted excusable neglect. Under the facts of that case, the trial court granted default judgment in favor of Jeter after Flying J failed to submit an Answer to Jeter's complaint due to a miscommunication between Flying J and its insurance adjustor, who was supposed to retain counsel for Flying J. *Flying J*, 720 N.E.2d at 1248–49. In reversing the trial court's default judgment, we found that Flying J had followed the necessary steps to hire counsel and reasonably believed it had retained counsel. *Id.* at 1249.

However, in our review of the instant case, we find several distinctions that make it difficult to apply our rationale in *Flying J* to Olson's situation with his third attorney, Reynolds. For example, in *Flying J*, only three months passed between the filing of Jeter's complaint and the trial court's default judgment against Flying J. Here, Olson's Complaint was initiated in July of 2004 and the trial court issued no dispositive ruling until February of 2006. Thus, Olson had a year and a half to secure permanent counsel and prosecute his claim. Also, unlike *Flying J*, no judgment was entered against Olson, but instead his Complaint was dismissed. Moreover, as plaintiff, rather than Flying J's position as defendant, Olson bore the responsibility in the present case for pursuing his complaint diligently. For these reasons—in particular, the much shorter amount of time Flying J was given to defend the suit than Olson had to pursue his—we conclude that Olson's alleged grounds for reversal are inadequate in comparison to the facts of *Flying J*.

Moreover, even if Olson reasonably believed he had hired Reynolds and was surprised by Reynolds' inability to argue on his behalf in an Indiana court, there is little to no evidence in the record that Olson or Reynolds had done anything to move the case forward in the six months prior to dismissal. Therefore, because we agree with the trial court that Olson failed to show mistake, surprise, or excusable neglect, we need not address whether his Complaint established meritorious claims. *See* T.R. 60(B). In summary, we conclude that the trial court did not abuse its discretion by refusing to reinstate his Complaint under Trial Rule 60(B).

### CONCLUSION

Based on the foregoing, we conclude that the trial court properly dismissed Olson's Complaint under Trial Rule 41(E), as well as properly refused to reinstate his Complaint under Trial Rule 60(B).

Affirmed.

KIRSCH, C.J., and FRIEDLANDER, J., concur.

### ORDER

On January 16, 2007, the Court handed down its opinion in this appeal marked Memorandum Decision, Not for Publication. The Appellee, by counsel, filed a Motion to Publish Memorandum Decision. Appellee requests an order from this Court to publish this opinion because "it clarifies the law regarding Ind. Trial Rule 41 (E), excusable neglect and the breakdown of communication between an attorney and client . . . ."

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS:

(1) Appellee's Motion to Publish Memorandum Decision is GRANTED, and this Court's opinion heretofore handed down in this cause on January 16, 2007, marked

Memorandum Decision, Not for Publication, is now ORDERED PUBLISHED.

All Panel Judges Concur.