**INDIANA DEPARTMENT OF NATURAL RESOURCES, Appellant–Plaintiff,**

v.

**Ronald W. RITZ and Sandra J. Ritz, Husband and Wife, Appellees–Defendants.**

No. 24A01–1009–PL–442.

Court of Appeals of Indiana.

March 31, 2011.

Rehearing Denied June 14, 2011.

Gregory F. Zoeller, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Michael J. Menninger, Wood & Lamping LLP, Cincinnati, OH, Attorney for Appellees.

## OPINION

CRONE, Judge.

### Case Summary and Issues

The Indiana Department of Natural Resources ("DNR") and Ronald W. and Sandra J. Ritz each claim possession of a deed conveying ownership of a tract of real estate. DNR sought to develop this disputed real estate as part of its park system. The Ritzes removed DNR's survey equipment from the property and denied DNR employees access to the property. DNR

filed suit against the Ritzes for ejectment and trespass. The trial court dismissed the suit for failure to prosecute. DNR appeals, asserting that the dismissal was an abuse of discretion. We conclude that the desirability of deciding this case on the merits is of particular import because of the alleged public interest in the disputed property. We also conclude that the prejudice to the Ritzes caused by DNR's delay in prosecuting the case is minimal and that DNR is now diligently pursuing the case. Therefore, even though the length of DNR's delay in prosecuting the case is considerable, we conclude that the trial court abused its discretion in dismissing the case. Accordingly, we reverse and remand for further proceedings.

### Facts and Procedural History

Both DNR and the Ritzes claim ownership of a certain tract of real estate along the former Whitewater Canal in Franklin County. DNR claims that it obtained title to the disputed property under a quit claim deed dated July 15, 1946, from the Whitewater Canal Association of Indiana, Inc., which DNR recorded in the Franklin County Recorder's Office. DNR's deed provides that the property is to be "used and administered by the State of Indiana as part of its public park system in the same manner as other lands, parks and historical sites are held, used and administered by the State." Appellant's App. at 26, Ex. C to Verified Complaint filed Sept. 17, 1991. The Ritzes claim that they obtained title to the disputed property under a January 11, 1971, deed from Charles E. and Daisy A. Metcalf, who had obtained title to the disputed property from Helena

Biere under a July 30, 1954, warranty deed.

In 1991, DNR sought to develop a hiking and biking trail that would include the disputed real estate and placed boundary markers on the property to survey it. The Ritzes operated a canoe business on property adjacent to the disputed real estate. The Ritzes' employees removed the markers and denied DNR employees access to the property.

The procedural history of this case is rather complicated. On September 17, 1991, in cause number 24C01–9109–CP–1479 ("cause 1479"), DNR filed a complaint against the Ritzes for ejectment, trespass, preliminary and permanent injunctions, and damages. *Id.* at 8. On April 29, 1992, the trial court sua sponte issued an order to show cause why the case should not be dismissed pursuant to Indiana Trial Rule 41(E) for failure to prosecute, but the case was not dismissed. *Id.* at 3.[1] Three years later, on September 19, 1995, the trial court dismissed cause 1479 for failure to prosecute pursuant to Trial Rule 41(E), but on November 15, 1995, the trial court ordered that "cause [1479] shall remain active and not be dismissed."[2] *Id.*

On December 2, 1998, pursuant to Trial Rule 41(E), the trial court again ordered the parties "to show cause *in writing* why this action should not be dismissed on or before December 31, 1998." *Id.* at 166 (emphasis added). The order did not set a hearing, nor does the chronological case summary ("CCS") show that a hearing was set or held. On April 30, 1999, the trial court issued an order dismissing cause 1479, which provided, "The Court having heretofore ordered the parties herein to

---

1. Although the chronological case summary ("CCS") does not show that a hearing was held, the trial court found that a hearing was held in its 2010 order dismissing cause 1479. Appellant's App. at 88.

2. Again, the CCS does not show that a hearing was held, but the trial court's 2010 order dismissing cause 1479 does. Appellant's App. at 88.

show cause on or before December 31, 1998 why this action should not be dismissed and no cause having been shown, the Court now dismisses said cause pursuant to T.R. 41(E)." *Id.* at 167.

Over ten years later, on October 21, 2009, in cause number 24C02–0910–PL–269 ("cause 269"), DNR filed a complaint against the Ritzes for trespass, injunction, damages, and to quiet title pertaining to essentially the same real estate that was the subject of cause 1479. DNR also filed a motion for an order authorizing entry upon the real estate for purposes of completing a survey, which was granted. On January 26, 2010, the Ritzes filed a motion to dismiss, asserting that the case was originally filed in 1991 and was dismissed with prejudice. The Ritzes also asserted that cause 279 should be dismissed because the statute of limitations for quiet title actions had run.

On March 15, 2010, DNR filed a motion to reinstate cause 1479 and a request for hearing, contending that Trial Rule 41(E) required a hearing prior to dismissal, such a hearing was not held, and therefore the 1999 dismissal had been improper. On April 16, 2010, the trial court granted DNR's motion on the basis that the dismissal of cause 1479 without setting a hearing did not comply with Trial Rule 41(E) and ordered cause 1479 reinstated and that the parties "proceed in a timely fashion to prosecute all pending claims[.]" *Id.* The Ritzes did not oppose or challenge the trial court's reinstatement of cause 1479. Instead, on April 19, 2010, the Ritzes filed a motion to set hearing on the trial court's December 2, 1998, show cause order.

On April 19, 2010, in cause 269, the trial court made an entry in the CCS that acknowledged receipt of the order of reinstatement for cause 1479. Also on that day, DNR filed a response to the Ritzes'

motion to dismiss cause 269 and filed the surveyor's report. On April 26, 2010, the Ritzes filed a reply in support of their motion to dismiss, adding the argument that cause 269 should be dismissed pursuant to Indiana Trial Rule 12(B)(8) because the case was pending in another court in the State. That same day, DNR filed a motion for summary judgment on its quiet title action, attaching the surveyor's affidavit and requesting the trial court to take notice of the surveyor's report previously filed. On June 11, 2010, the trial court granted the Ritzes' motion to dismiss cause 269 on two grounds: (1) the case was pending in another Indiana court; and (2) the statute of limitations had run. The trial court found that DNR's summary judgment motion was moot. On July 9, 2010, DNR filed a motion to correct error, which the trial court denied on August 9, 2010. DNR timely appealed that order.

Meanwhile in cause 1479, on June 3, 2010, a hearing was held on the December 2, 1998, show cause order with the parties presenting argument as to whether the trial court should dismiss the case for failure to prosecute pursuant to Trial Rule 41(E). On June 14, 2010, the trial court dismissed cause 1479 pursuant to Trial Rule 41(E) because DNR had failed to take any action for almost eleven years and "offered no argument as to why they have remained silent for almost eleven (11) years other than current counsel's assertion that he could not speak for his predecessors." *Id.* at 90. On July 9, 2010, DNR filed a motion to reconsider, asserting that Trial Rule 41(E) allows the trial court "to set conditions for the continuance of the litigation to assure diligent prosecution" and that "no prejudice has been caused by the delay." *Id.* at 92. On July 12, 2010, DNR filed its notice of appeal. On July 13, 2010, the trial court denied DNR's motion to reconsider. On October

26, 2010, in response to DNR's motion to consolidate, this Court consolidated DNR's appeals of causes 1479 and 269.

### Discussion and Decision

■ Initially, we observe that DNR does not ask us to address the dismissal of cause 269. Rather, DNR urges us to reverse the trial court's dismissal of cause 1479 for failure to prosecute pursuant to Indiana Trial Rule 41(E). We will reverse a trial court's dismissal of a cause of action under Trial Rule 41(E) only upon an abuse of discretion. *Grant v. Wal–Mart Stores, Inc.,* 764 N.E.2d 301, 303 (Ind.Ct.App. 2002). An abuse of discretion occurs where the trial court's decision is against the logic and effect of the facts and circumstances. *Id.* We will affirm the trial court if any evidence supports the trial court's decision. *Id.* However, "we view dismissals with disfavor, and dismissals are considered extreme remedies that should be granted only under limited circumstances." *Rueth Dev. Co. v. Muenich,* 816 N.E.2d 880, 884 (Ind.Ct.App.2004) (citing *Beemer v. Elskens,* 677 N.E.2d 1117, 1119 (Ind.Ct.App.1997), *trans. denied* ), *trans. denied* (2005).

Indiana Trial Rule 41(E) provides,

Whenever there has been a failure to comply with these rules or when no action has been taken in a civil case for a period of sixty [60] days, the court, on motion of a party or on its own motion shall order a hearing for the purpose of dismissing such case.[3] The court shall enter an order of dismissal at plaintiff's costs if the plaintiff shall not show sufficient cause at or before such hearing. Dismissal may be withheld or reinstatement of dismissal may be made subject to the condition that the plaintiff comply with these rules and diligently prosecute the action and upon such terms that the court in its discretion determines to be necessary to assure such diligent prosecution.

Unless the court in its order for dismissal otherwise specifies, a dismissal under Trial Rule 41(E) operates as an adjudication upon the merits. Ind. Trial Rule 41(B). Indiana Trial Rule 41(F) states, "A dismissal with prejudice may be set aside by the court for the grounds and in accordance with the provisions of [Trial] Rule 60(B)." 4

As a preliminary issue, the Ritzes argue that "DNR's appeal must fail because it is procedurally defective." Appellees' Br. at 4. The Ritzes assert that following the June 14, 2010, dismissal of cause 1479 pursuant to Trial Rule 41(E), DNR failed to file a motion pursuant to Trial Rule 41(F) or request relief pursuant to any of the reasons enumerated in Trial Rule 60(B).5

---

**3.** We observe that "when the court orders a hearing and notice of the hearing date is sent to the plaintiff, the hearing requirement of T.R. 41(E) is satisfied, regardless of whether the plaintiff or his counsel attends the hearing." *Metcalf v. Estate of Hastings,* 726 N.E.2d 372, 374 (Ind.Ct.App.2000), *trans. denied.*

**4.** We observe that DNR's March 15, 2010, motion to reinstate is properly viewed as a motion pursuant to Trial Rule 41(F) in accordance with Trial Rule 60(B). *See Hoosier Health Sys., Inc. v. St. Francis Hosp. & Health Ctrs.,* 796 N.E.2d 383, 386 (Ind.Ct.App.2003) ("Reinstatement following dismissal is governed by subsection (F)"). Although the Ritzes could have challenged the trial court's April 16, 2010, reinstatement of cause 1479 on the basis that DNR failed to carry its burden to show that the requirements of Trial Rule 60(B) were satisfied, they did not. Nor do they present such an argument on appeal. We express no opinion as to whether such a challenge would have prevailed.

**5.** Trial Rule 60(B) provides in relevant part as follows:

On motion and upon such terms as are just the court may relieve a party or his legal representative from an entry of default, final

Further, the Ritzes contend that DNR's motion to reconsider failed to state any reason that DNR would be entitled to relief pursuant to Trial Rule 60(B). According to the Ritzes, "Because DNR did not avail itself of its obligation to seek relief pursuant to Trial Rule 41(F), the present appeal is defective and must be overruled." *Id.* We disagree.

■ This Court has stated that "a dismissal pursuant to Trial Rule 41(E) is a final appealable order." *Chapo v. Jefferson Cnty. Plan Comm'n,* 926 N.E.2d 504, 511 (Ind.Ct.App.2010) (citing *Lee v. Pugh,* 811 N.E.2d 881, 888 n. 3 (Ind.Ct.App. 2004)). As such, DNR was not obligated to seek to have the case reinstated pursuant to Trial Rule 41(F) before it appealed the trial court's dismissal of the case. The trial court issued its order dismissing cause 1479 on June 14, 2010. DNR timely filed its notice of appeal on July 12, 2010. Accordingly, DNR's appeal is not procedurally defective.

■ Turning now to the merits of DNR's argument, we note that a trial court's authority to dismiss a case pursuant to Trial Rule 41(E) "stems not only from considerations of fairness for defendants, but is also rooted in the administrative discretion necessary for a trial court to effectively conduct its business." *Baker Mach., Inc. v. Superior Canopy Corp.,* 883 N.E.2d 818, 823 (Ind.Ct.App.2008), *trans. denied.* The purpose of this rule is "to ensure that plaintiffs will diligently pursue their claims." *Olson v. Alick's Drugs, Inc.,* 863 N.E.2d 314, 319 (Ind.Ct.App. 2007), *trans. denied.* The plaintiff bears the burden of moving the litigation, and the trial court has no duty to urge or require counsel to go to trial, even where it would be within the court's power to do so. *Belcaster v. Miller,* 785 N.E.2d 1164, 1167 (Ind.Ct.App.2003), *trans. denied.* " 'Courts cannot be asked to carry cases on their dockets indefinitely and the rights of the adverse party should also be considered. He should not be left with a lawsuit hanging over his head indefinitely.' " *Id.* (quoting *Hill v. Duckworth,* 679 N.E.2d 938, 939–40 (Ind.Ct.App.1997)).

■ In determining whether a trial court abused its discretion in dismissing an action for failure to prosecute, we consider several factors.

order, or final judgment, including a judgment by default, for the following reasons:
(1) mistake, surprise, or excusable neglect;
(2) any ground for a motion to correct error, including without limitation newly discovered evidence, which by due diligence could not have been discovered in time to move for a motion to correct errors under Rule 59;
(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
(4) entry of default or judgment by default was entered against such party who was served only by publication and who was without actual knowledge of the action and judgment, order or proceedings;
(5) except in the case of a divorce decree, the record fails to show that such party was represented by a guardian or other representative,

. . .
(6) the judgment is void;
(7) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
(8) any reason justifying relief from the operation of the judgment, other than those reasons set forth in subparagraphs (1), (2), (3), and (4).
The motion shall be filed within a reasonable time for reasons (5), (6), (7), and (8), and not more than one year after the judgment, order or proceeding was entered or taken for reasons (1), (2), (3), and (4). A movant filing a motion for reasons (1), (2), (3), (4), and (8) must allege a meritorious claim or defense.

These factors include: (1) the length of the delay; (2) the reason for the delay; (3) the degree of personal responsibility on the part of the plaintiff; (4) the degree to which the plaintiff will be charged for the acts of his attorney; (5) the amount of prejudice to the defendant caused by the delay; (6) the presence or absence of a lengthy history of having deliberately proceeded in a dilatory fashion; (7) the existence and effectiveness of sanctions less drastic than dismissal which fulfill the purposes of the rules and the desire to avoid court congestion; (8) the desirability of deciding the case on the merits; and (9) the extent to which the plaintiff has been stirred into action by a threat of dismissal as opposed to diligence on the plaintiff's part. The weight any particular factor has in a particular case depends on the facts of that case.

*Olson,* 863 N.E.2d at 319–20; *Lee,* 811 N.E.2d at 885.

In arguing that the trial court abused its discretion, DNR emphasizes three factors: the desirability of deciding the case on the merits; lack of prejudice to the Ritzes; and its diligence in pursuing the resolution of this dispute since 2009 when it filed cause 269. The Ritzes argue that they have suffered prejudice, DNR has been deliberately dilatory, and the delay has been extraordinarily long.

As to the desirability of deciding the case on the merits, the Ritzes contend that "the case has been decided on the merits by virtue of Trial Rule 41(E)." Appellees' Br. at 5. This is an odd argument given that the very purpose of this appeal is to review the trial court's dismissal of the case pursuant to Trial Rule 41(E), and the desirability of deciding the case on the merits is a factor in determining whether the trial court abused its discretion. The question we must consider on appeal is whether and to what extent it is important to actually determine the validity of the parties' respective claims of title to the disputed property. Significantly, the Ritzes completely ignore the fact that the disputed property is claimed on behalf of the public. The deed under which DNR claims ownership provides that the disputed property is to be preserved as a natural sanctuary for all Indiana citizens. Thus, it is the public's alleged interest in the property that underscores and elevates the desirability of deciding the validity of the parties' ownership claims.

■ If DNR's deed is valid, then DNR holds the property in trust for the public, and the public's interest in the property cannot be alienated. In *Steele v. Fowler,* 111 Ind.App. 364, 371, 41 N.E.2d 678, 681 (1942), the court stated,

It has long been the established rule in this state that title by prescription cannot be acquired by adverse possession of land that has been platted and dedicated to the public for streets and alleys. Such a dedication is to the public and not to the municipality. The latter holds as trustee and cannot surrender the grant, except as the statute provides, nor lose the same by the negligence or laches of its officers.

*See also Hall v. Breyfogle,* 162 Ind. 494, 500, 70 N.E. 883, 885 (1904) ("Title by prescription cannot be acquired by adverse possession of land dedicated to the public for streets and alleys."). Although *Steele* and *Hall* involved public land for streets and alleys, whereas here the concern is with land allegedly dedicated as park land, we think that the principle that government property cannot be lost by adverse possession applies with equal force. Further, this principle has been codified in Indiana Code Section 32–21–7–2(a), which provides that "title to real property owned by the state or a political subdivision (as

defined in IC 36–1–2–13) may not be alienated by adverse possession."

■ Likewise, Indiana courts have upheld the precept that the State's ownership of property is not subject to statutes of limitation relating to property actions. In *Wolfe v. Town of Sullivan*, 133 Ind. 331, 334–35, 32 N.E. 1017, 1019 (1893), the court stated,

> The common-law maxim is, "Once a highway, always a highway." Highways belong to the public, and are under the control of the sovereign, either immediately, or through local governmental instrumentalities. The right of the public to the use of the highways *is not barred by the statute of limitations*. No one can acquire a right to the adverse use of a legally established highway by user, no matter how long such use may continue, for each day's user is a nuisance punishable by fine. There can be no such thing as a permanent rightful private possession of a public street.

(Emphasis added.) *See also Schmidt v. Draper*, 137 Ind. 249, 254, 36 N.E. 709, 711 (1894) ("The statute of limitations does not run as to the occupancy of part of a public street or alley of a city, nor could the plaintiffs, by such permissive possession of a part of the alley, acquire any rights by such adverse possession."); *Collett v. Bd. of Comm'rs of Vanderburgh Cnty.*, 119 Ind. 27, 34, 21 N.E. 329, 331 (1889) ("The statute of limitations, operating alone, may not affect the rights of the public, or of a corporation holding property for a public use[.]"); *Cheek v. City of Aurora*, 92 Ind. 107, 114 (1883) ("The statute of limitations, applicable as between individuals, can not affect a city as to its rights in its streets as trustee for the public."). As such, it is DNR's prior recorded deed that will cast a perpetual shadow over the Ritzes' ownership rights.[6] Indeed, DNR would not be precluded from initiating a new claim of trespass against the Ritzes.

Turning to prejudice, DNR argues that the Ritzes have not shown that they were prejudiced by its delay in prosecuting the case and that "the Ritzes would be more prejudiced by the perpetual cloud on their title than by going forward with the DNR's action that would resolve the competing claims." Appellant's Br. at 13. The Ritzes contend that the State should not be able to create a cloud on someone's title merely by claiming superior title. However, the Ritzes mischaracterize the source of the cloud on their title. The cloud exists not because DNR filed suit against them claiming ownership of the property, but because DNR has a prior recorded deed through which it claims ownership of the property. The Ritzes do not deny DNR's assertion that a title search will reveal the deed under which it claims ownership of the property.

The Ritzes have not asserted prejudice from having built on, developed, or improved the property in the belief that it belonged to them. The record before us does not reveal how or if the Ritzes were actually using the property. The record shows merely that when DNR in the 1990s placed stakes on the property for a survey thereof, the Ritzes' employees removed them and denied DNR employees access to the property. The Ritzes do not assert that they have paid taxes on the property or that the loss of the disputed property would materially affect their canoe business. In fact, the Ritzes' exclusive dominion over the disputed property during the interim caused by the delay was a benefit as opposed to a detriment, particularly if it turns out that DNR is the rightful owner.

---

**6.** The Ritzes argue that DNR may be estopped from denying them title to the disputed property. That issue is not ripe for appellate review.

The Ritzes accuse DNR of manipulating the judicial system and claim that they have been prejudiced because they "have already been subject to unnecessary cost and expense due to DNR's dilatory conduct, [and] would be subject to further unnecessary cost and expense, with no certainty that DNR will diligently prosecute its claim this time around." Appellees' Br. at 6. We find no evidence that DNR is "manipulating" the judicial system. The Ritzes place great emphasis on the fact that the trial court issued three show cause orders. However, many courts routinely issue a show cause order simply when the docket shows no activity, but not all the actions a party takes, such as discovery, are reflected on the docket. As to the first two show cause orders, DNR must have demonstrated sufficient cause not to dismiss the case. As to the third show cause order, no hearing was set or held before the dismissal. Further, when DNR's chief legal counsel, Kari Evans, filed cause 269 in 2009, she was not even aware of the initiation and dismissal of cause 1479. Appellant's App. at 98. When Evans learned of cause 1479, she attempted to locate the file, but was informed by the Indiana Attorney General's Office, which represented DNR from 1991 to 1998 in cause 1479, that the file had been destroyed pursuant to that office's ten-year document retention schedule. *Id.* Evans also learned that

> due to several complicating factors, [DNR] was forced to abandon original plans to develop the Whitewater Canal Trail in 1996, but at that time asked the Indiana Attorney General's Office to continue to pursue [cause 1479]. While the Division of Outdoor Recreation was developing a second approach for development of the Whitewater Canal Trail, a class action lawsuit was initiated in Boone County, Indiana, by a property owner, to determine ownership of cer-

tain railroad corridors throughout the State of Indiana, including portions of the Whitewater Canal corridor. Following conclusion of that case, the Whitewater Canal Trail project was resurrected in 2004, and project development continues to the present.

*Id.* (citation omitted).

Since DNR brought the 2009 lawsuit, it has diligently pursued the action. The day after filing cause 269, DNR requested permission to enter the property to conduct a survey, completed the survey, and submitted it to the trial court. DNR opposed the Ritzes' motion to dismiss cause 269 and filed a motion for summary judgment. When DNR learned of the existence of cause 1479, it filed a motion to reinstate and has vigorously sought to keep the case active.

However, the Ritzes direct our attention to the length of DNR's delay in prosecuting the case. They assert that "under Indiana law, the amount of time in litigation itself created the prejudice to the Ritzes." Appellees' Br. at 6. It is correct that "a lengthy period of inactivity may be enough to justify dismissal under the circumstances of a particular case, especially if the plaintiff has no excuse for the delay." *Lee,* 811 N.E.2d at 885. To bolster their argument, the Ritzes rely on *Olson,* 863 N.E.2d 314. In 2002, Olson's former employer, Alick's, agreed to pay Olson $120,000 to settle his employment discrimination claim, which had been pending since 1998. On July 13, 2004, Olson filed a complaint against Alick's for unlawfully stopping payment on the original settlement check and against his former attorney, Luks–McFarland, for unlawfully converting the same check by refusing to tender it to Olson. In December 2005, Alick's and Luks–McFarland filed a motion to dismiss for failure to prosecute.

Following a hearing, the trial court dismissed the case, and Olson appealed.

The *Olson* court began its analysis of Olson's appeal by considering Olson's six-month delay in prosecuting the case. The *Olson* court acknowledged that the six-month delay was not among the most egregious periods of inactivity, but noted that dismissals with shorter delays had been upheld. The *Olson* court concluded that the six-month delay was not sufficiently insignificant such that the trial court had abused its discretion in dismissing the case. Next, the *Olson* court concluded that Olson bore some, if not all, of the responsibility for the delay in the case. As to prejudice, the *Olson* court recognized that Olson had commenced the employment discrimination lawsuit in 1998 and stated, "In our view, the length of this litigation should have forced Olson to diligently pursue his claim more so than the average plaintiff. Alick's and Luks–McFarland have undoubtedly been prejudiced as issues related to this cause of action have been hanging over their heads for nearly a decade." *Id.* at 321.

We acknowledge that the delay in this case, spanning over a decade, is greater than that in *Olson.* However, any prejudice here is of a different nature than that in Olson, which involved a private monetary dispute. As we have previously discussed, any prejudice to the Ritzes caused by the delay seems to be negligible, and they actually may have received some value in exercising exclusive control over the property. Further, the *Olson* court did not affirm the trial court's dismissal based solely on the length of the delay:

> Our review of the record shows that Olson has previously requested and been granted actions by a court, be it state or federal, and then subsequently exhibited dissatisfaction with the outcome. In addition, even though we acknowledge that

> there is a preference for deciding cases on the merits, Olson's series of lawyers and *unwillingness to resolve this situation* has likely lost him credibility at this point.

*Id.* at 321 (emphasis added). In contrast, DNR's actions do not evince an unwillingness to solve this dispute.

■ We reiterate that the "weight any particular factor has in a particular case depends on the facts of that case." *Id.* at 320. We recognize that here the length of delay is substantial and ordinarily might warrant considerable import. *See Belcaster,* 785 N.E.2d at 1168 (upholding dismissal where length of delay was approximately ten months and plaintiffs provided no reason for delay and had lengthy history of having deliberately proceeded in a dilatory fashion); *Lee,* 811 N.E.2d at 886 (upholding dismissal where length of delay was ninety days and plaintiffs violated discovery rules); *Baker Mach.,* 883 N.E.2d at 824 (upholding dismissal where plaintiff failed to prosecute contract action filed six years before, with no action for nearly the last two years); *Lee v. Friedman,* 637 N.E.2d 1318, 1321 (Ind.Ct.App.1994) (upholding dismissal where length of delay was fifteen months, defendants were in their eighties, delays would harm them to greater degree than delays would harm younger defendants, and record showed other dilatory conduct on plaintiff's part); *Gibbs v. Douglas M. Grimes, P.C.,* 489 N.E.2d 638, 642 (Ind.Ct.App.1986) (upholding dismissal where plaintiff failed to communicate with court or defendants for over one year, despite plaintiff's contention that he experienced difficulty in obtaining counsel because one defendant was city judge). However, the desirability of deciding this case on the merits is exceptionally important because of the alleged public interest in the disputed land, and therefore this factor deserves greater weight than the

other factors. As to any harm or disadvantage to the Ritzes due to the delay in prosecution, the record before us does not reveal that they have suffered significant prejudice, and they may have actually derived some benefit. In addition, although it is unclear from the record what caused the Attorney General's office to fail to pursue the action in the 1990s, there is no evidence that the State was purposefully and deliberately dilatory or unwilling to resolve the dispute like the plaintiff in Olson. DNR has pursued the case conscientiously since 2009. Based on the foregoing, we conclude that the trial court's dismissal of cause 1479 is against the logic and effect of the facts and circumstances before it. Accordingly, we reverse the dismissal of cause 1479 and remand for further proceedings.

Reversed and remanded.

BRADFORD, J., concurs with separate opinion.

KIRSCH, J., concurs.

BRADFORD, Judge, concurring.

I concur fully with the majority's opinion but write separately to emphasize that our decision is not to be seen as providing the State immunity from the provisions of Trial Rule 41(E). Only in unusual circumstances such as this, where there is no discernible prejudice and the proceeding in question is not subject to normal time limitations, should the State be able to neglect its case for as long as it did here without it being dismissed. What it all comes down to, I suppose, is that it would make little sense to order a 41(E) dismissal when the State could file another lawsuit at any time addressing the exact same issues. In other contexts, however, the State should be—and is—subject to the provisions of Rule 41(E). *See, e.g., State v. McClaine*, 261 Ind. 60, 64, 300 N.E.2d 342,

345 (1973) ("[w]e believe that the State has an obligation to diligently prosecute all eminent domain claims. When the State condemns the property of its citizens, it must do so in an expeditious manner, avoiding all unnecessary delays. Citizen-landowners should avail themselves of the T.R. 41(E) remedy whenever the State fails to meet this requirement of due diligence."); *State v. Hardman*, 542 N.E.2d 230, 231 (Ind.Ct.App.1989) (allegation of Class C infraction speeding); *State ex rel. Murray v. Heithecker's Estate*, 167 Ind. App. 156, 157–58, 338 N.E.2d 313, 313–14 (1975) (State claim against estate).

I would also like to echo the majority's desire to decide this case on the merits. If, indeed, DNR's claim is superior, the property in question would be preserved on behalf of all Hoosiers as parkland. This is not a case where the State is seeking to act on behalf of a small subset of Indiana residents or a favored constituency. If, on the other hand, the Ritzes' claim is superior, they could exclude the public from the land entirely if they chose to do so, as would be their right. Nobody has greater respect for property rights than I do, and I believe that questions involving those rights should be fully litigated before they are granted or taken away. Although I express no opinion on the strength of either side's claim to the land at issue, I much prefer that questions affecting the interests of all Hoosiers be decided on the merits.