NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 27, 2012[*]
Decided June 27, 2012

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 11-2273

| | |
|---|---|
| DONN OLSON | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Indiana, South Bend Division. |
| *v.* | |
| | No. 3:08-CV-56 |
| MICHAEL REYNOLDS, | |
| *Defendant-Appellee.* | Rudy Lozano, *Judge.* |

**O R D E R**

Donn Olson sued one of his former attorneys, Michael Reynolds, for mishandling a prior lawsuit and won a judgment for treble damages. Seeking an even greater victory, Olson appeals the district court's denial of his motions for sanctions and attorneys' fees, contending that

---

[*]After examining the Olson's brief and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the brief and the record. *See* FED. R. APP. P. 34(a)(2)(C).

Reynolds opposed Olson's complaint frivolously and vexatiously. Because the district court did not abuse its discretion or commit legal error, we affirm.

The dispute between Olson and Reynolds grows out of two earlier lawsuits. The first suit began in 1998 when Olson, a pharmacist, sued his former employer, Alick's Drug Stores. The parties orally settled the case for $120,000, and Olson's attorney, Georgia Luks-McFarland, drafted a written settlement agreement. Alick's signed the draft and sent Luks-McFarland a check for $120,000. Olson, however, refused to sign. He complained that the draft did not include a mutual nondisclosure and nondisparagement term, which Olson believed the parties had orally agreed to. Olson demanded that Luks-McFarland turn over the settlement check to him anyway, but she declined and withdrew as Olson's counsel.

Olson, now pro se, sought to rely on the oral settlement agreement. He filed a copy of the settlement conference transcript with the court to explain why he would not sign the written agreement. Because he did not file the transcript under seal, Alick's moved for liquidated damages under the confidentiality clause of the oral agreement. Alick's also moved to compel Luks-McFarland to return its settlement check. The district court ruled that the oral settlement agreement was binding, awarded Alick's $30,000 in liquidated damages, but denied its motion to recover the check. Alick's then stopped payment on the check, reasoning that it now owed Olson only $90,000. Olson responded by moving to compel Luks-McFarland to hand over the check. The court ordered Luks-McFarland to deliver the check to Olson, but by this time the check was more than six months old and thus statutorily invalid. Olson eventually paid the liquidated damages, prompting Alick's to attempt to deliver a fresh check for the $120,000. But now Olson refused to accept it, evidently because he considered himself injured from the stop-payment action.

These events led Olson to file his second lawsuit. He sued Alick's and Luks-McFarland in Indiana state court, alleging that Alick's had unlawfully stopped payment on its first settlement check and that Luks-McFarland had committed conversion by refusing to deliver the check to him. Olson retained an attorney who collected Alick's check for Olson, but that lawyer declined to represent Olson in his new suit. Eventually Olson retained yet another lawyer, Michigan attorney Michael Reynolds, who agreed to work on his Indiana case against Alick's and Luks-McFarland, even though he was not licensed to practice in Indiana. After at least six months of inactivity in the Indiana case, the two defendants moved to dismiss for failure to prosecute. Although Reynolds had never filed an appearance, he showed up to contest the motions to dismiss, telling the court that he was attending only on Olson's last-minute request. The trial court denied his request to oppose the motions because Reynolds had not sought admission pro hac vice. The court then dismissed the case; the Indiana Court of Appeals affirmed. *Olson v. Alick's Drugs, Inc.*, 863 N.E.2d 314, 320–21 (Ind. Ct. App. 2007).

Blaming Reynolds for losing that suit, Olson filed his next case, the current lawsuit. Olson sued Reynolds in Indiana state court for negligence and attorney deceit, *see* IND. CODE § 33-43-1-8. He charged that Reynolds bungled his second suit and then lied to the court by asserting that Olson had asked him only at the last minute to appear. He sought recovery of his out-of-pocket losses—the $5,000 retainer that he paid Reynolds and the $41,000 that he spent on his unsuccessful appeal—amounts that could be trebled under the attorney-deceit statute. Reynolds removed the case to federal district court. He raised 20 affirmative defenses and advanced three counterclaims. (He later withdrew two of the counterclaims, and the third—seeking a declaratory judgment—the judge rejected.) He also twice moved for summary judgment, but these motions were denied because he ignored the court's rule requiring him to attach a list of undisputed material facts. Under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), he sought to bar certain expert testimony but this motion was also defective, and denied, for failure to cite relevant authority.

During a three-day jury trial, Reynolds denied that he had agreed to represent Olson in court. He testified that he warned Olson that he would need to hire an Indiana-licensed lawyer and that Reynolds would only assess whether the claims were plausible. Reynolds also argued that Olson's own inactivity in the case before retaining Reynolds contributed to its dismissal and that by pursuing a doomed appeal, Olson exacerbated his damages. The jury rejected most of this and returned a verdict of nearly $120,000 for Olson. The figure represents Olson's damages reduced by 15 percent for comparative fault, then trebled.

Next, Olson asked the court for attorney fees. Olson maintained that Reynolds's counterclaims, his summary-judgment and *Daubert* motions, and his affirmative defenses were frivolous and vexatious. He sought to recover nearly $150,000 in attorney fees and costs incurred in his suit against Reynolds under 28 U.S.C. § 1927 and under the Indiana attorney-deceit statute. In the alternative, under Rule 11 of the Federal Rules of Civil Procedure Olson sought to recover $20,000 in fees that he attributed to Reynolds's allegedly baseless filings. The district court declined to award attorney fees or otherwise sanction Reynolds under Rule 11 or § 1927, finding that his behavior did not rise to the level of unreasonable or vexatious. Although Reynolds's motions, counterclaims, and affirmative defenses ultimately failed, the court was not convinced that Reynolds knew when he filed them that they lacked legal basis; it found his tactics more consistent with strong advocacy. The court further observed that the Indiana attorney-deceit statute did not appear to allow a party to recover his fees in securing relief and declined to award fees under the statute.

Olson appeals, arguing that the district court abused its discretion in declining to award fees under Rule 11 and § 1927 and that it legally erred in holding that attorneys' fees are not recoverable under the Indiana attorney-deceit statute. Under Rule 11 and § 1927, he asserts that the majority of Reynolds's affirmative defenses lacked any factual support. The

counterclaims, Olson further argues, were frivolous because Reynolds failed to produce evidence or tender jury instructions to support them. Olson also contends that Reynolds's motions for summary judgment and his *Daubert* motion contained fatal procedural defects that he never even attempted to cure, betraying these motions' lack of merit. Reynolds, for his part, has not participated in this appeal.

We begin with the district court's denial of Rule 11 sanctions. Rule 11 requires that a motion for sanctions be served on the opposing party 21 days before it is filed in court. *See* FED. R. CIV. P. 11(c)(2); *Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chicago*, 649 F.3d 539, 552 (7th Cir. 2011). This practice creates a safe harbor that allows a party to avoid sanctions by amending or retracting a challenged filing. *See* FED. R. CIV. P. 11 advisory committee's notes (1993 amendments); *see also Golden v. Helen Sigman & Assocs, Ltd.*, 611 F.3d 356, 363 (7th Cir. 2010). Olson did not serve his motion until after the trial was over. Accordingly, his motion was untimely with respect to all trial and pretrial filings. *See* FED. R. CIV. P. Advisory Committee's Notes (1993 Amendments) ("Given the 'safe harbor' provisions . . . a party cannot delay serving its Rule 11 motion until conclusion of the case."). Although Olson complains that he responded to Reynolds's supposedly frivolous filings at great expense, had he timely served his Rule 11 motion, Reynolds might have retracted the filings and spared Olson the expense. Thus, we find no fault with the district court's denial of Rule 11 sanctions.

We turn next to the denial of sanctions under section 1927. Under this provision, a court may in its discretion impose sanctions only upon a finding of bad faith—meaning extreme negligence, "serious and studied disregard for the orderly process of justice," pursuit of claims without plausible factual or legal bases, or conduct that a reasonably careful attorney would know to be unsound. *See Jolly Group, Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (collecting cases). The statute is couched in permissive terms, however; a court need not grant sanctions even for conduct that a district court finds to be vexatious. *See Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1014 (7th Cir. 2004) (refusing to reverse a discretionary denial of § 1927 sanction even though district court found conduct vexatious); *Ross v. City of Waukegan*, 5 F.3d 1084, 1089 n.6 (7th Cir. 1993). And the finding about bad faith itself is subject to the clear-error standard of review. *See Finance Inv. Co. (Bermuda) Ltd. v. Geberit AG*, 165 F.3d 526, 530 (7th Cir. 1998).

Under this deferential standard, the district court did not err. Although the *Daubert* and summary-judgment motions should have included the legal citations and statements of material facts, these obvious omissions made their defeat likely, minimizing their burden to Olson and the court. Further, although Reynolds ultimately abandoned or lost his counterclaims and many of his affirmative defenses, this does not require a finding that these pleadings were implausible when he filed them or that he had pursued them

unreasonably. *See Jolly Group*, 435 F.3d at 721; *Overnite Transp. Co. v. Chicago Indus. Tire Co.*, 697 F.2d 789, 795 (7th Cir. 1983); *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999). Thus the district court's ruling, that after its "significant involvement and familiarity" with the case it had seen nothing that rose to the level of unreasonable and vexatious behavior, was not erroneous.

Finally, we address whether attorneys' fees are recoverable under the Indiana attorney-deceit statute. Olson argues that attorneys' fees are recoverable because, he asserts, the statute's goal of fully compensating injured clients would be frustrated by imposing on those clients the costs of litigating a violation of the statute. Indiana courts, however, follow the "American Rule," under which attorneys' fees are presumptively unrecoverable absent agreement between the parties or explicit rules or statutory language to the contrary. *See Neu v. Gibson*, --- N.E.2d ----, 2012 WL 1637470, at *14 (Ind. Ct. App. May 10, 2012); *Smyth v. Hester*, 901 N.E.2d 25, 32 (Ind. Ct. App. 2009). Olson asserts that he spent nearly $150,000 to secure a $120,000 verdict, and that the drafters of the Indiana statute surely could not have intended such a result. But Olson is no different in this regard than any litigant who finds the value of a claim outweighed by the costs of litigation.

Accordingly, the judgment of the district court is AFFIRMED.