# FOR PUBLICATION

ATTORNEY FOR APPELLANTS:

**PAUL T. DEIGNAN**
Taft Stettinius & Hollister LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
HEWLETT-PACKARD:

**HENRY EFROYMSON**
Ice Miller LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
BANK OF AMERICA AS SUCCESSOR
TO BARCLAYS BUSINESS CREDIT,
INC.:

**ALAN K. MILLS**
**HOWARD E. KOCHELL**
**MARK J. CRANDLEY**
Barnes & Thornburg LLP
Indianapolis, Indiana

FILED
Mar 08 2012, 8:54 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, LOCAL UNION NO. 2371, OFFICIAL BARGAINING AGENT, et. al., | ) ) ) ) ) | |
| Appellants-Plaintiffs, | ) ) | |
| vs. | ) ) | No. 33A05-1107-CP-345 |
| MERCHANDISING EQUIPMENT GROUP, DIVISION OF MEG MANUFACTURING CORPORATION; BARCLAYS BUSINESS CREDIT, INC., HEWLETT-PACKARD COMPANY FINANCE AND REMARKETING DIVISION; FIRST NAT'L LEASING CORP., BANK ONE, RICHMOND, N.A.; INDIANA STATEWIDE CERTIFIED DEVELOPMENT CORP.; XEROX CORPORATION; and STEELWORKS, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

Appellees-Defendants.                           )
                                                )

---

APPEAL FROM THE HENRY CIRCUIT COURT
The Honorable John L. Kellam, Special Judge
Cause No. 33C01-9611-CP-173

---

**March 8, 2012**

**OPINION - FOR PUBLICATION**

**VAIDIK, Judge**

## Case Summary

In 2011, the trial court granted the defendants' Trial Rule 41(E) motion to dismiss for failure to prosecute after the case had been pending for eighteen years, the court failed to rule on the summary judgment motions for fourteen years, and the plaintiffs took no action to push the case to resolution for a decade. The plaintiffs now appeal the dismissal. Given the extensive and unprecedented delay in this case and the plaintiffs' lack of excuse for the delay, we conclude that the trial court did not abuse its discretion in dismissing this case for failure to prosecute.

## Facts and Procedural History

This lawsuit dates back to the closing of a manufacturing facility in Cambridge City, Indiana, nearly two decades ago. The plaintiffs are 220 former employees of Merchandising Equipment Group, Division of MEG Manufacturing Corporation ("MEG"), and the employees' union representative, The United Brotherhood of Carpenters and Joiners of America, Local Union No. 2371.

2

In April 1992, MEG's assets were sold to SteelWorks, and the employees learned shortly thereafter that they did not have jobs with either MEG or SteelWorks. MEG also filed for bankruptcy. According to the employees, at the time of their termination they were owed compensation for, among other things, unused vacation and sick time, unpaid medical expenses, unpaid wages, and back pay and benefits as a result of MEG's failure to provide advance notice of the closure as required by federal law. The employees claim they are entitled to $3.3 million.

In June 1992, the employees filed notices of intention to hold a mechanic's lien, Ind. Code § 32-28-3-1, and corporate employees' lien, Ind. Code § 32-28-12-1, with the Wayne County Recorder's Office. The following June the employees and their union (collectively referred to as "the Union") filed a complaint against Hewlett-Packard Company Financing and Remarketing Division ("HP"), Barclays Business Credit, Inc. ("the Bank"),[1] and other third parties that conducted business with MEG. The Union specifically named HP and the Bank as defendants because of their security interests in MEG's property. That is, HP repossessed and sold its collateral previously held by MEG pursuant to HP's purchase money security interest in the collateral. In addition, the Bank provided financing to MEG and took a security interest in equipment and other items of property MEG purchased as well as a mortgage on the facility itself. The Union claimed that pursuant to the mechanic's lien and corporate employees' lien statutes, the employees' liens were superior to HP's and the Bank's. This was a novel argument under Indiana law.

---

[1] Bank of America, N.A. is Barclays' successor in interest and stands in its shoes for purposes of this case. Bank of America and Barclays are collectively referred to as "the Bank."

3

The Bank filed its motion for summary judgment in late 1995, and HP filed its motion for summary judgment in early 1996. A hearing was held on these motions in May 1996. However, in July 1996 the trial court judge hearing the case disqualified himself because of a conflict of interest with one of the parties, and a special judge accepted jurisdiction in August 1996. Because there was no transcript of the earlier summary-judgment hearing, the special judge reheard the summary-judgment arguments in January 1997. The parties stipulated that the "time limitation for ruling upon a motion set forth in T.R. 53.1 shall not apply to ruling upon pending summary judgment motions." Appellants' App. p. 534; *see also* Ind. Trial Rule 53.1(A) ("In the event a court fails for thirty (30) days to set a motion for hearing or fails to rule on a motion within thirty (30) days after it was heard or thirty (30) days after it was filed, if no hearing is required, upon application by an interested party, the submission of the cause may be withdrawn from the trial judge and transferred to the Supreme Court for the appointment of a special judge.").

Following the January 1997 summary-judgment hearing, the parties filed supplemental memoranda. In April 1997, the Bank filed a second motion for summary judgment which added a federal preemption defense. Then, in October 1997, the parties submitted a thirty-page "Outline of Oral Argument" that meticulously explained their various positions on the summary-judgment motions.

From 1997 to 2011, the special judge did not rule on the summary-judgment motions. During this time period, the CCS mainly shows follow-ups to the summary-judgment motions and changes to the numerous attorneys involved in this litigation. But

4

it shows some other activity, too. For example, in February 1998, the Bank asked the special judge to rule on the summary-judgment motions or, in the alternative, to hold a new hearing. Appellants' App. p. 610. In this motion, the Bank acknowledged that the issues were "complex." *Id.* The special judge, however, never ruled on this motion. Then, in August 1999, the Bank requested a status conference. All parties appeared at the October 1999 status conference, following which they supplemented their previous summary-judgment filings.

In July 2001, which was approximately two years after the last status conference, the Union requested a status conference. *Id.* at 24-25. This would be the first and only action the Union took to move the litigation until HP filed a Trial Rule 41(E) motion to dismiss for failure to prosecute in 2011. The special judge, however, did not set a conference. After July 2001, nothing of substance occurred in the case until September 2008, when the special judge set a status conference for the following month.[2] *Id.* at 26. The Union blames its lack of action during these seven years on its assumption that the special judge "was working on a ruling on the Motions for Summary Judgment." Appellants' Br. p. 7. As an example of the lack of activity during this time period, the CCS reflects a nearly four-year period where not a single CCS entry was made. *See* Appellants' App. at 25 (December 2003 to September 2007). Following the October 2008 status conference, the parties stipulated that the Union's second amended complaint had indeed been filed. *Id.* at 27.

---

[2] The Union points out that in 2007, Bank of America was substituted as successor in interest to Barclays, and the attorneys changed.

5

Other than this stipulation, nothing happened after the October 2008 status conference until March 18, 2011, when HP filed a Trial Rule 41(E) motion to dismiss for failure to prosecute. HP argued that the case "has remained pending in this Court since 1996 [when the special judge was appointed], more than fourteen (14) years, without resolution" and that the Union "has failed to prosecute this case in a manner in which it may be resolved within a reasonable period of time." *Id.* at 701. HP further argued that "[j]ustice would be served by dismissal of this case inasmuch as [HP] has been required to defend this action, and reflect the contingent claim in public disclosure documents, for a period of time in excess of fourteen (14) years, and resolution of this case through continued prosecution by [the Union] is unlikely." *Id.* at 701-02. The Bank joined in HP's motion. *Id.* at 28. Approximately two weeks later, the Union filed its first motion to move the litigation since 2001, specifically, a motion to set a pretrial conference. The Union explains, without any citation to the record, that there was no activity for nearly three years after the October 2008 status conference because "[t]he parties were of the understanding . . . that the Court was working on its ruling on the Motions for Summary Judgment." Appellants' Br. p. 8. After a hearing[3] and over the Union's objection, the special judge granted the motion to dismiss for failure to prosecute. Appellants' App. p. 28-29, 716. The Union then filed a motion to correct errors, which the the special judge denied. *Id.* at 755-56.

The Union now appeals.

**Discussion and Decision**

---

[3] There is no transcript for this hearing. The only transcript contained in the record on appeal is the January 2007 summary judgment hearing. *See* Tr. p. 119 (Reporter's Certificate).

The Union contends that the trial court erred in dismissing this case for failure to prosecute according to Trial Rule 41(E). We will reverse a Trial Rule 41(E) dismissal for failure to prosecute only in the event of a clear abuse of discretion, which occurs if the trial court's decision is against the logic and effect of the facts and circumstances before it. *Belcaster v. Miller*, 785 N.E.2d 1164, 1167 (Ind. Ct. App. 2003), *trans. denied.* We will affirm if there is any evidence that supports the decision of the trial court. *Id.*

Trial Rule 41(E) provides:

> [W]hen no action has been taken in a civil case for a period of sixty [60] days, the court, on motion of a party or on its own motion shall order a hearing for the purpose of dismissing such case. The court shall enter an order of dismissal at plaintiff's costs if the plaintiff shall not show sufficient cause at or before such hearing. Dismissal may be withheld or reinstatement of dismissal may be made subject to the condition that the plaintiff comply with these rules and diligently prosecute the action and upon such terms that the court in its discretion determines to be necessary to assure such diligent prosecution.

The purpose of this rule is "'to ensure that plaintiffs will diligently pursue their claims. The rule provides an enforcement mechanism whereby a defendant, or the court, can force a recalcitrant plaintiff to push his case to resolution.'" *Belcaster*, 785 N.E.2d at 1167 (quoting *Benton v. Moore*, 622 N.E.2d 1002, 1006 (Ind. Ct. App. 1993), *reh'g denied*). "The burden of moving the litigation is upon the plaintiff, not the court. It is not the duty of the trial court to contact counsel and urge or require him to go to trial, even though it would be within the court's power to do so." *Id.* (quotation omitted). "Courts cannot be asked to carry cases on their dockets indefinitely and the rights of the adverse party should also be considered. [The defendant] should not be left with a lawsuit hanging over his head indefinitely." *Id.* (quotation omitted).

Courts of review generally balance several factors when determining whether a trial court abused its discretion in dismissing a case for failure to prosecute. These factors include: (1) the length of the delay; (2) the reason for the delay; (3) the degree of personal responsibility on the part of the plaintiff; (4) the degree to which the plaintiff will be charged for the acts of his attorney; (5) the amount of prejudice to the defendant caused by the delay; (6) the presence or absence of a lengthy history of having deliberately proceeded in a dilatory fashion; (7) the existence and effectiveness of sanctions less drastic than dismissal which fulfill the purposes of the rules and the desire to avoid court congestion; (8) the desirability of deciding the case on the merits; and (9) the extent to which the plaintiff has been stirred into action by a threat of dismissal as opposed to diligence on the plaintiff's part. *Id.* The weight any particular factor has in a particular case appears to depend upon the facts of that case. *Id.* However, a lengthy period of inactivity may be enough to justify dismissal under the circumstances of a particular case, especially if the plaintiff has no excuse for the delay. *Id.* Although dismissals are generally viewed in disfavor and considered extreme remedies that should be granted only under limited circumstances, the court need not impose a sanction less severe than dismissal where the record of dilatory conduct is clear. *Beemer v. Elskens*, 677 N.E.2d 1117, 1119 (Ind. Ct. App. 1997), *reh'g denied*, *trans. denied*; *Lee v. Friedman*, 637 N.E.2d 1318, 1321 (Ind. Ct. App. 1994).

The lengthy period of inactivity in this case coupled with the Union's excuse that it took no action because it was waiting (for fourteen years) on the special judge's

8

summary judgment ruling justifies the judge's dismissal of this case for failure to prosecute.

We begin by observing that the delay in this case is unprecedented. The motions for summary judgment were filed in 1995 and 1996, and the hearing was held before the special judge in 1997. In 2001, the Union requested a status conference. After this point, however, the Union took no action to move the litigation. The trial court requested a status conference in 2008, but again the Union took no action to push the case to resolution until HP filed the motion to dismiss for failure to prosecute in 2011. Only at this point did the Union file a motion to set a pretrial conference. According to this timeline, the Union took no action for a period of ten years. While most failure-to-prosecute cases are judged by inaction in months or sometimes days, this case is judged by inaction in decades. *See* 22A Stephen E. Arthur & Jerome L. Withered, Indiana Practice: Civil Trial Practice § 34.10 (2nd ed. 2007) (noting that dismissals have been affirmed where cases had been pending without action for sixty-five, forty-five, and nineteen months); *see also Olson v. Alick's Drugs, Inc.*, 863 N.E.2d 314, 320 (Ind. Ct. App. 2007) ("While we agree that a six-month delay is not among the most egregious periods of inactivity that this court has seen, we have upheld dismissals under circumstances of a shorter delay."), *reh'g denied*, *trans. denied*; *Lee v. Pugh*, 811 N.E.2d 881, 885-86 (Ind. Ct. App. 2004) (affirming dismissal where case had been pending for one year and the plaintiffs failed to take action for ninety days); *Belcaster*, 785 N.E.2d at 1167-68 (affirming dismissal where inaction for ten months).

Nevertheless, the Union argues that because of the complexity of this case, the parties agreed early on that the case would be tried in a certain manner. *See, e.g.*, Appellants' Br. p. 3-4 ("Because such efforts [depositions of all 220 employees and retaining experts to analyze their claims] would be time consuming, expensive and disruptive, the proposal to which all parties agreed was that the Defendants would file a Motion for Summary Judgment raising several legal issues, both statutory interpretation issues as well as federal preemption issues, along with others, with the purpose of obtaining legal rulings on matters of first impression . . . . All agreed, including the Plaintiffs, that such a procedure for managing the case was the appropriate approach."), 20-21. However, the Union provides no citation to the record for this alleged agreement. But even if the parties had an agreement to seek summary judgment on certain issues before proceeding to costly depositions and other issues in the case, HP and the Bank never agreed to an indefinite delay of the case or that the Union was relieved of its duty to diligently prosecute the case. *See* Appellants' App. p. 748 (affidavit from HP's attorney: "Many years ago, [HP] agreed that it made sense for Plaintiffs to submit certain legal issues present in the case through a motion for summary judgment . . . and agreed to waive the initial 'lazy judge' rule . . . . [HP] never agreed that the Plaintiffs should be relieved of their obligation to prosecute their case even if it became apparent that the Court would not rule on the motion for summary judgment, or that the case should pend in an inactive status for years and years due to the lack of a ruling on the motion."). At most, HP and the Bank agreed that the thirty-day time limit for ruling on the summary-

judgment motion did not apply. This, however, is not equivalent to HP and the Bank agreeing to an indefinite delay.

This decade-long delay is compounded by the Union's failure to put forth a good reason for it. The Union explains that it did not take any action because it was waiting on the special judge's summary-judgment ruling. In light of the fact that the judge did not rule on the motion for fourteen years, this explanation defies logic. Even though the Union took action in 2001 to move the litigation by requesting a status conference, the Union took no further action to move the litigation for the next ten years. Despite the fact that the parties surrendered their right to a change of judge, the Union still had other options available to it. For example, the Union could have requested (1) a ruling on the summary-judgment motions, (2) additional status conferences, (3) another summary-judgment hearing, (4) a pretrial conference (which it did *after* HP filed the motion to dismiss for failure to prosecute), or (5) a trial date. The Union did not request any of these measures for a decade. Although the Union asserts that it was "ready, able and willing to proceed to trial," Appellants' Br. p. 21, its inaction belies this assertion. The pending summary-judgment motions did not relieve the Union of its duty to move the litigation.

We recognize that dismissals are generally disfavored and do not condone the special judge's failure to rule on the summary-judgment motions for fourteen years. Nevertheless, the burden of moving the litigation is upon the plaintiff, not the court. Given the Union's decade-long delay and lack of excuse for the delay, we conclude that

this case is one of those limited circumstances where dismissal is warranted. We therefore affirm the trial court.

Affirmed.

FRIEDLANDER, J., and DARDEN, J., concur.